PHILIP N. JACKSON

v.

LESLIE B. MILLER, superintendent of buildings of the city of
Newark.

[Decided April 26th, 1905.]

The owner of land in a city, having erected thereon a fence more than
eight feet high before any ordinance had been passed prohibiting such
fences, is entitled to a preliminary injunction restraining the city super-
intendent of buildings (pending final hearing) from removing the fence
on the ground that it was erected in violation of the ordinance, since
*certiorari* would not lie to review the mere determination of the superin-
tendent of buildings; nor would it lie to review the ordinance in question
which applied only to fences subsequently erected.

On application for preliminary injunction. Heard on bill and
affidavits and answer and affidavits.

*Mr. Neilson Abeel,* for the complainant.

*Mr. Malcolm MacLear,* for the defendant.

EMERY, V. C.

Complainant in 1900 erected a wooden fence twenty feet high
on the rear of his lots located on Waverly avenue, in the city of
Newark. Two dwelling-houses are erected on the front of the
lots and within about twenty-five feet of the fence. At this time
there were no ordinances regulating the height of fences, and it
does not clearly appear that the premises on which the fence was
erected were within the fire limits fixed by the common council.
The revised ordinances (Revision of 1902), adopted January 3d,
1902, by section 100 (*p. 51*) included the premises within the
fire limits, and provided (*p. 53 § 103*) that before the erection
of any building or part of any building, structure or part of any

structure, within these limits, the owner should procure a permit from the superintendent of buildings. By section 105, subdivision c (p. 57), it was provided that "fences of wood shall not be erected over eight feet high," and section 161 of the revised ordinances of 1902 (p. 98) provided a penalty of $50 for each violation or failure to comply with any provision of the ordinance for a first conviction and a fine of $25 for each day's continuance of violation. At the time of the passage of this ordinance there was no special legislative authority giving the city authority to regulate the height of fences. On April 8th, 1903, a law was passed (P. L. 1903 p. 513) authorizing the common council of cities to regulate by ordinance the height and material of fences, and to provide for the removal, change or alteration of all fences, signs, billboards and advertisements "now or hereafter existing," and the imposition of a penalty of $25 for any violation thereof. On June 19th, 1903, an ordinance was passed amending section 105, subdivision c, of the revised ordinances of 1902, and provided that the superintendent of buildings should have power to order the removal of any sign, billboard or fence when, in his opinion, it shall become dangerous or unsafe, and in case of failure of the owner to remove on notice, the superintendent was authorized to remove the same and enter the premises to do so. This ordinance also provided that "no fence shall be erected over eight feet high." On September 5th, 1903, a further ordinance was passed giving the superintendent the power to order the repair or removal of any sign, billboard or fence which, in his opinion, is, or is likely to become, dangerous or unsafe, or is erected or maintained in a manner contrary to the ordinances of the city, and to remove the same after notice. On failure of the owner to remove, the superintendent was authorized to do so, and to enter the premises for that purpose. This ordinance provided no penalty for its violation. Before the bill was filed the defendant, as superintendent of buildings, served a written notice on complainant that he had erected and maintained a fence over eight feet high, "which is contrary to and in violation of the city ordinance," and notifying complainant to have said fence removed within five days, or that the ordinance would be enforced. The bill charges and the

answer admits that the fence referred to in the notice is the fence in question, and that defendant, the superintendent of buildings, intends to remove the fence. The notice to the owner to remove did not demand the removal because the fence was unsafe or dangerous, but the answer and affidavits set up that it is dangerous and unsafe, not by reason of the unsafe character of the structure itself, but because of danger in case of fire in the vicinity. This allegation is fairly contested by the affidavits filed in rebuttal, and so far as any right of removal is based on the ground that the fence is unsafe or dangerous on this account, it is admitted on the part of the defendant that complainant has a right to have the injunction retained until final hearing. The question mainly argued was the right of the superintendent to enjoin the removal of the fence on the ground that it was maintained contrary to the ordinance. The fence having been erected prior to the passage of any ordinance regulating the height of wooden fences or any law authorizing such ordinances, the complainant has plainly the right to raise these questions in relation to the ordinance.

*First.* Whether the fence is maintained in violation of the terms of any ordinance.

The first ordinance (revised ordinances 1902) directing that "fences of wood shall not be erected over eight feet high," was prospective only, and so was the amendment of June 19th, 1903, that "no fence shall be erected over eight feet high." The ordinance of September 5th, 1903, authorized the superintendent to remove any fence erected or maintained in a manner contrary to the ordinances of the city, but as the previous ordinances did not in terms prohibit the maintenance of fences more than eight feet high already erected, the fence in question apparently was not maintained contrary to the ordinance. The general rule is that mere police legislation of this character operates only prospectively and does not demand the sacrifice of existing physical property. *Freund Police Power* § *538; Buffalo* v. *Chadeayne, 134 N. Y. 163.*

*Second.* The ordinance regulating the height of wooden fences was passed after the erection of the fence, and the fence not being in itself a nuisance which required immediate abatement

in the interest of public safety, the owner is entitled to test the validity of the ordinance as affecting his property, if it should be held to extend to the maintenance of an existing fence. Even a law requiring all frame buildings within certain limits to be taken down, or preventing their use, would probably be held unconstitutional. *Freund Police Power* § *538; Buffalo* v. *Chadeayne, 134 N. Y. 163.* The application of the ordinance as well as its validity, if it be held to apply to complainant's fence, can be tested by a prosecution for penalties prescribed by the ordinance of 1902, section 161, for its violation. The *ex parte* opinion of the superintendent of buildings that the maintenance of the fence is a violation of the ordinance is of no effect whatever as a judgment upon this question, and legisla-. tion giving it that effect would be unconstitutional. *Hutton.* v. *Camden, 39 N. J. Law (10 Vr.) 122, 127 (Court of Errors and Appeals, 1876)*; *Newark, &c., Horse Railway Co.* v. *Hunt, 50 N. J. Law (21 Vr.) 308, 314 (Supreme Court, 1888).* The statute of 1903 authorizing ordinances regulating the height of fences specially authorized also the recovery of penalties for their violation, and in the absence of any claim on the part of the city that the immediate removal is necessary for public safety, it is doubtful whether there is any remedy for the removal of the fence other than the enforcement of the penalty directed by the statute. Pending such suit for penalty, and where no immediate public interest forbids, the complainant would seem to be clearly entitled to restrain the invasion and destruction of his property. Where the proceedings of the municipality, under the police power, for the removal or dispossession by summary process, without trial of the right, are such as can be removed by *certiorari,* the summary proceedings will be set aside by the courts of law. *Dawes* v. *Hightstown, 45 N. J. Law (16 Vr.) 127, 129 (Supreme Court, 1883)*; *Avis* v. *Vineland, 56 N. J. Law (27 Vr.) 474 (1894).* If the proceedings are not removable by *certiorari,* the owner's right to retain the *status quo,* where the question of right should be determined, has been protected by injunction. In *Doughty* v. *Somerville, 33 N. J. Eq. (6 Stew.) 1,* commissioners were enjoined from the summary removal of a fence in the absence of any proceedings to

determine its alleged encroachment on a street. No ordinance had been passed specially directing its removal, and the commissioners were proceeding merely as ministerial officers. In *Manko* v. *Chambersburg, 25 N. J. Eq.* (*10 C. E. Gr.*) *168* (*1874*) (*Runyon, Chancellor*), there was a direction by the borough to the complainant to remove his buildings as an encroachment, and a threat on its part to remove if he did not. No ordinance or resolution specially directing the removal seems to have been passed. The removal was enjoined pending the trial of the right in the action itself. On a subsequent trial of the right at law, it was held that the borough had no right to the removal. *Chambersburg* v. *Manko, 39 N. J. Law* (*10 Vr.*) *496* (*Court of Errors and Appeals, 1877*). In *Tainter* v. *Morristown, 19 N. J. Eq.* (*4 C. E. Gr.*) *46, 58* (*Zabriskie, 1868*), the destruction of fences, shade trees and shrubbery was said to be an irreparable injury, which complainant was entitled to enjoin if unauthorized. At the argument I suggested to counsel that a *certiorari* of the ordinance, which would operate as a stay, might suspend the action of the superintendent pending the decision of the question, and that this application to a court of law might be first made. But the ordinance itself is general and does not specially apply to the complainant, and may be valid as against other persons who have erected fences since its passage, and it seems to be settled by the later cases at law that its validity on *certiorari* cannot be contested by complainant until judgment for penalties for its violation is obtained against him. *Pennsylvania Railroad Co.* v. *Jersey City, 47 N. J. Law* (*18 Vr.*) *286, 289* (*Court of Errors and Appeals, 1888*); *Gas Light Co.* v. *Rahway, 58 N. J. Law* (*29 Vr.*) *510, 511* (*Supreme Court, 1896*). The reason is that ordinances which are general and not necessarily unreasonable or invalid *in toto* as to all persons affected by them cannot be set aside altogether, which is the effect of a judgment against its validity on *certiorari*, and if the ordinance is invalid to a limited extent, and only against the prosecutor and others similarly entitled, the method for testing its validity is by objecting to the validity of the ordinance as against them in the penal suits brought for violation. The earlier cases, and also *Morgan* v. *Orange, 50 N. J. Law* (*21 Vr.*)

*389* (*1888*), referred to by defendant's counsel, sustaining the
writ of *certiorari* to such general ordinance before or without
judgments in penal suits, have been said to be overruled by these
later cases. *Hamblet* v. *Asbury Park, 61 N. J. Law* (*32 Vr.*)
*502* (*Supreme Court, 1898*). The ordinances in question cannot,
I think, be said to be certainly and necessarily unreasonable or
invalid as to fences subsequently erected, and could not there-
fore, under the above cases, be set aside on *certiorari* removing
the ordinances, even if invalid as against complainant. The
other cases on *certiorari* to ordinances specially affecting prop-
erty, referred to by the counsel for the city, are cases where the
ordinances on their face affected the property the prosecutor was
proved to own, or rights he was entitled to enjoy, and were set
aside altogether. Outside of the general ordinances in this case,
referring apparently to fences thereafter erected, there is no
record or proceeding which the *certiorari* could remove. The
notice by the superintendent is a mere ministerial act, and I
know of no case at law which makes such mere ministerial pro-
ceedings the subject of judicial inquiry by *certiorari*. Mani-
festly the only ground of relief to complainant is the intention
of the officer, admitted by the answer, to execute the notice and
remove complainant's property under a claim of right. Such
threat and claim is, in the absence of a remedy at law, ground
for an injunction pending hearing, if the right of complainant
is one of a character which requires it. The fence in question is
a structure erected by complainant on his own lands and is main-
tained in connection with the use and enjoyment of his dwelling-
houses erected on the lots. Rights of this character are con-
stantly protected by injunction, and the propriety of an injunc-
tion, if there was no relief by *certiorari,* was not contested at the
argument. The removal is threatened by a public officer of the
city, claiming the right to destroy property of a private owner,
under authority given to him by an ordinance of the city.
Whether he has such authority is at least doubtful, and as
against a municipality exceeding its statutory powers by a de-
struction of property of this character, used in connection with
dwellings, the owner is entitled to have the question of right
tried, either in this court or at law, and in the meantime to have

the present status maintained. As an injunction pending determination is the only method of securing this status, he is entitled to an injunction until final hearing. Whether on the final hearing the question of the application and validity of the ordinance will be finally determined, or the cause be directed to stand over pending determination by proper proceedings at law, is not now decided. Complainant should, I think, before final hearing, make the city a party defendant, in order that the city may formally adopt or repudiate the action of the defendant under the ordinance.