R. A. CROSSMAN ET AL. V. CITY OF GALVESTON ET AL.

No. 3304. Decided January 17, 1923.

(247 S. W., 810.)

**1.—City—Charter Powers—Declaring Building a Nuisance.**

A city charter conferring power on its authorities "to declare all wooden buildings in the fire limits which they deem dangerous to contiguous buildings or in causing or promoting fires to be nuisances and to require or cause the same to be removed" did not authorize the enactment of an ordinance declaring any building which has become dilapidated a nuisance and providing for its removal. (p. 309).

**2.—Same—Police Power.**

In the absence of express legislative sanction, a city is without authority to declare that a nuisance (e. g. any dilapidated building) which is not so per se or at common law. Pye v. Peterson, 45 Texas, 312, followed. Even with express legislative sanction, such a definition of nuisance would be void. Not even the Legislature can declare that a nuisance which is not so in fact. Stockwell v. State, 110 Texas, 550; Spann v. City of Dallas, 111 Texas, 350, followed. (pp. 309, 310).

**3.—Same—Unsightly building.**

Mere unsightliness of a building, which is the usual and natural result of dilapidation, does not make it a nuisance; and the city would have no authority to declare it a nuisance for that reason alone.    (p. 310).

**4.—Fire Limits—Wooden Building—Right to Repair.**

A wooden building lawfully constructed outside the fire limits, could not, by its subsequent inclusion in them, be condemned as a nuisance simply because of its wooden construction, nor could its owner's right to repair it, short of substantal· reconstruction, be denied by city ordinance.    To deny the right to repair the building so as to be fit for use was to deny his enjoyment of the property right itself, and would be a taking of property without due process of law.    This is distinguished from the legislative right to provide for condemnation of property within fire limits for public purposes on making compensation.    (p. 311).

**5.—Nuisance—Wooden Building.**

A wooden building is not a nuisance per se, and can only become so by the use to which it is put or the state of repair in which it is maintained. Whether it is so, is a justiciable question, determinable only by a *court* of competent jurisdiction, and not by the mere declaration of city authorities. This cannot be made final, to be enforced *vi et armis* by city officers, and not by the judgment of a court.    Spann v. City of Dallas, 111 Texas, 350; Stockwell v. State, 110 Texas, 550;    followed.    (pp. 311-314).

**6.—City Ordinance—Constitutional Law—Equity.**

An ordinance providing for the destruction of property by city authorities on their sole determination that it constitutes 'a nuisance is not relieved from the vice of unconstitutionality by the existence of an equitable remedy for the owner through injunction.    (pp. 314, 315).

**7.—Rulings Distinguished.**

The rulings herein are to be distinguished from cases involving the right to summarily destroy property in a public emergency such as fire or pestilence; nor the like destruction of instrumentalities designed for the commission of crime.    (p. 315).

**8.—Nuisance—Evidence.**

Whether or not a building is a nuisance is to be established by legal and competent evidence in the same manner as any other fact.    Proceedings of City Commissioners and reports of its inspectors in regard to it are not admissible against the owners as evidence of the facts, at least in the absence of a claim for punitive damages.    (p. 315).

**9.—Burden of Proof.**

The burden of proving that a building sought to be destroyed by a city as a nuisance was in fact one is upon a city.    (p. 315).

**10.—Nuisance—Building—Abatement.**

A building lawfully erected cannot be destroyed as a nuisance if it can be otherwise abated, as by cleaning, disinfection, or repair.    (p. 316).

**11.—Fire Limits—Permission to Repair.**

An ordinance which makes the right to repair any wooden building within fire limits of the city dependent alone on the arbitrary determination of the governing City Commission is void as furnishing no rule of action except their discretion.    Spann v. City of Dallas, 111 Texas, 350, followed.    (pp. 316, 317).

**12.—Same—Mandamus.**

The owner of property, having a right to repair same without application to the city authorities for permission to do so, they having no rights or duties with reference thereto, will not be required by mandamus to award such permission. (p. 317).

Error to the Court of Civil Appeals for the First District, in an appeal from Galveston County.

Crossman sued the City of Galveston and its governing body the City Commissioners for injunction and mandamus. He appealed from a judgment for defendants on an instructed verdict in their favor; and on its affirmance (204 S. W., 128) obtained writ of error. The case was referred to the Commission of Appeals, Section B, but was subsequently withdrawn from them and submitted to the Supreme Court.

*Frank S. Anderson,* for plaintiffs in error.

The court erred in instructing a verdict for appellees, because the alleged proceedings of the Board of Commissioners condemning the buildings and ordering them torn down, were illegal, inoperative and void, and not conclusive or binding upon appellants. Constitution of Texas, Article I, Section 19; Dibrell v. City of Coleman, 172 S. W., 550-551; Russell v. City of Fargo, 148 N. W., 610, 615; Portsmouth v. Snell, 8 N. H., 338; Champer v. Green Castle, 35 N. E., 14; N. Y. City Fire Dept. v. Gilmour, 44 N. E., 177.

The Court erred in instructing a verdict for appellees and entering judgment for appellees, because the power conferred by the charter and ordinance upon the Board of Commissioners, and the alleged proceedings of the Board of Commissioners thereunder, are subject to determination by the court, as to the fact of nuisance, and are inoperative and void, unless the building is in fact a nuisance. Constitution of Texas, Art. I, Sec. 19; Dibrell v. City of Coleman, 172 S. W., 550-551 and cases cited; City of San Antonio v. Salvation Army, 127 S. W., 860, 864, 865; G. C. & S. F. Ry. Co. v. City of Belton, 122 S. W., 413-417; Walther v. City of Cape Girardeau, 149 S. W., 36-38, (Mo.); Russell v. City of Fargo, 148 N. W., 610, 614. (N. D.); Yates v. City of Milwaukee, 77 U. S., (10 Wall.), 497, 19 L. Ed., 984; Laugel v. City of Bushnell, 63 N. E., 1086; Grossman v. City of Oakland, 30 Ore., 478, 41 Pac., 5; First National Bank v. Sarlls, 129 Ind., 201, 28 N. E., 434; 28 Cyc., p. 716 and cases there cited; Wood on Nuisances, second edition, 742, 744.

The Court erred in instructing a verdict and rendering judgment for appellees, because the pleadings and evidence raised an issue of fact as to whether appellants' buildings constituted a nuisance, and the evidence being conflicting, and such that reasonable minds might

112 Tex.—20

differ as to the conclusions to be drawn therefrom, and from which the jury might have found the question of fact in favor of the plaintiffs, it was the duty of the Court to submit the case to the jury. T. & P. Ry. Co. v. Lucas, 190 S. W., 800, 820; Sovereign Camp, &c., v. McCulloch, 192 S. W., 1154, 1159; Peerless Fire Ins. Co. v. Reveire, 188 S. W., 254; Gulf States Telephone Co. v. Evetts, 188 S. W., 289; Holtzclaw v. Moore, 192 S. W., 582; Berryhill v. Berryhill, 193 S. W., 218; Joske v. Irvine, 91 Texas, 574, 44 S. W., 1059; Miller v. Burch, 32 Texas; 208; First Nat. Bank v. Sarlls, 129 Ind., 201, 28 N. E., 434; Gulf, C. & S. F. Ry. Co. v. City of Belton, 122 S. W., 413-418.

The fact as to whether appellants' buildings constituted a nuisance, being subject to determination by the Court and jury from the evidence, the proceedings of the Board of Commissioners were incompetent and improper as bearing upon the fact to be so determined, or upon any other issue in the case, and the court erred in overruling appellants' objection to the admission of the testimony and admitting the same in evidence. Authorities previously cited.

The Court of Civil Appeals, in its opinion on file herein, erred in its finding that Article 177 of the ordinances of the City of Galveston was valid, because said article is discriminatory and void in that it is violative of the fifth amendment to the Constitution of the United State. · Also in violation of the 14th Amendment to same. Hays v. Poplar Bluff, 173 S. W., 676, and cases cited; Ex Parte Broussard, 169 S. W., 660 and cases cited in dissenting opinion; 123 American State Rep., 36, and note; Elkhart v. Murray, 112 Am. St. Rep., 228; St. Louis v. Atlantic Quarry Co., 148 S. W., 948; Boyd v. Frankfort, 148 Am. St. Rep., 240; First Natl. Bank v. Sarlls, 129 Ind., 201, 28 N. E., 434; Yates v. City of Milwaukee, 77 U. S., (10 Wall.), 497, 19 L. Ed., 984.

*Mart H. Royston, City, Attorney,* and *P. A. Drouilhet,* Assistant, for defendants in error.

The action of the Court in instructing a verdict for the appellees was proper because the issues were issues of law properly determinable by the court. Dillon on Municipal Corporations, Fifth Ed., Sections 687 and 689; 29 Cyc., page 1153; 8 Cyc., page 1105; H. & T. C. Ry. Co., v. Dallas, 98 Texas, 396; G. C. & S. F. Ry. Co. v. City of Belton, 122 S. W, 413; Ferguson v. Selma, 43 Ala., 398; Chimine v. Baker, 32 Texas Civ. App., 520, 75 S. W., 330; Words and Phrases Vol. 5., page 4685.

The buildings in question being in fact a nuisance, the trial court did not err in instructing a verdict for the appellees and entering a judgment in their favor. Same authorities; also 8 Cyc., page 1105; First National Bank v. Sarlls, 129 Ind., 201, 13 L. R. A., 481; Schoen v. Atlanta, 97 Ga., 697, 33 L. R. A., 804.

There being no evidence upon which reasonable minds might differ and upon which the jury might have found the question of fact adversely to defendants, it was the duty of the court to instruct the jury to return a verdict in favor of the defendant. Same authorities.

The action of the court in admitting in evidence the proceedings of the Board of Commissioners of the City of Galveston had in connection with the hearing and adjudging the premises in question to be a nuisance was not erroneous, as that issue had been raised and become material by the pleadings of the parties.

This is a case wherein the City of Galveston, a municipal corporation, by a special grant from the Legislature of the State of Texas, was authorized to declare and condemn as nuisances all buildings or structures which from age, decay or neglect had been so dilapidated as to constitute a nuisance and to provide for the removal and abatement of such nuisance by removal of said building.

The evidence further discloses the fact that the buildings in question were a disgrace to the City and a menace to the health of the inhabitants and that public policy, as well as public duty, required and demanded of those charged with the protection of life and property within said city, that such nuisance be abated. And that with a patience and consideration rarely, if ever, exceeded in handling such matters, the Board of Commissioners˗ of the City of Galveston has sought to abate such nuisance, and that after a delay of over two years and with due notice to the owners, and after the owners had been heard in response to said notice, the Board of Commissioners, acting in accordance with the ordinance governing such cases, determined and adjudged that this nuisance should be abated, and it is to restrain these public officials in the discharge of a public duty that this action is brought and it is respectfully submitted that the judgment of the trial court is in all things fair, just and equitable, and we respectfully ask that the same be affirmed.

MR. CHIEF JUSTICE CURETON delivered the opinion of the court.

R. A. Crossman and others, plaintiffs in error, brought this suit in the District Court of Galveston County against the City of Galveston and its Board of Commissioners, for the purpose of enjoining and restraining them from destroying a certain building owned by plaintiffs in error, located in the City, and for a writ of mandamus requiring defendants in error to grant an application for leave to repair the building. On the trial an instructed verdict in favor of defendants in error was returned, and judgment entered denying the injunction and mandamus prayed for. This judgment, on appeal, was affirmed, 204 S. W., 128. Writ of error was granted, and the case is before us for review.

Defendants in error predicate their defense upon Sec. 34 (i) of the

charter of the City of Galveston of 1903, and Art. 241 of the Revised Ordinances adopted thereunder.

The charter provision gives the City authority: "(a) To regulate the building, maintenance and use of party walls, partition fences, parapet and fire walls, smoke flues, hot air flues, smokestacks, fireplaces of all sorts and all appliances therewith connected; (b) to require, provide, fix and regulate the inspection, safe construction, repair and maintenance of all public or private buildings; (c) to regulate, restrain or prohibit the constructing, placing, moving or repairing of wooden or frame buildings, or structures of any kind within the limits of said city or any part thereof, and to regulate, define and describe building materials that may or may not be used in the city or any part thereof; (d) to require or provide for the taking down and removal, by the city or by the owner, and at the expense of the owner, of buildings, walls or structures of any kind that are or may become dangerous, and generally to make and enforce any and all regulations concerning buildings and building materials requisite, necessary or proper to protect said city or any part thereof from fire and to protect the health and safety of the inhabitants; (e) and to declare all wooden buildings in the fire limits which they deem dangerous to contiguous buildings, or in causing or promoting fires, to be nuisances, and require or cause the same to be removed in such manner and at the expense of the owner, (f) and generally to establish such regulations for the prevention and extinguishment of fires as said Board of Commissioners may deem expedient; (g) and any and all cost and expense incurred by the city in the removal or destruction of any structure for any of the purposes aforesaid shall, under such regulations as the Board may prescribe, be collected of the owner, and be secured by lien on the land whereon the same is or was situated."

The ordinance relied on reads:

"When any building, awning, shed or other structure of any kind shall, from age, neglect, or other cause, become dilapidated, the same is hereby declared a nuisance, and the Mayor-President, on his own motion, may, and upon complaint being made to him in writing by ten or more citizens that any such building, awning, shed or other structure has become dilapidated and a nuisance, shall cause the same to be inspected by the Health Physician, the City Engineer and the Chief of the Fire Department, as a committee of inspectors, and if said inspectors, or a majority thereof, shall report the same to be dilapidated and a nuisance, setting forth the facts upon which they base their report, the Mayor-President shall lay said report before the Board of Commissioners for their consideration and action, and said Board shall give five days' notice to the owner or agent of said dilapidated building, awning, shed or other structure, if residing in

the City of Galveston, and if not residing in said city, said owner or agents shall be given notice by registered letter for such time as said Board may determine, to appear before said Board, stating why said dilapidated building, awning, shed or other structure, shall not be declared a nuisance and abated and removed, and if the Board shall adopt the report of the inspectors by a majority of two-thirds of the Board, the Mayor-President thereupon shall, in case said building, awning, shed or other structure, is within the fire limits, cause the same to be pulled down and removed as he may deem best, giving reasonable notice to the owner or agent to remove or pull down the same so that the nuisance may be abated, and if said building, awning, shed or other structure be outside of the fire limits, the Mayor-President shall require the owner or agent to repair the same or abate it, giving reasonable notice to the owner or agent to repair or abate the same, so that the nuisance be abated.''

The insistence is made by defendants in error that the charter provision quoted is express statutory authority for the ordinance declaring that dilapidated buildings are nuisances—that is, that this ordinance is based upon a direct grant of authority from the Legislature, rather than upon the general police power of the City. We cannot accede to this construction. There is nothing in the charter provision quoted authorizing the City to declare dilapidated buildings nuisances. The authority authorized by the charter is ''to declare all wooden buildings in the fire limits which they deem *dangerous to contiguous buildings or in causing or promoting fires* to be nuisances, and require or cause the same to be removed in such manner and at the expense of the owner.'' Neither this paragraph of the charter provision nor any other shown above authorized the declaration contained in the ordinance, that a dilapidated building should be a nuisance. Not having express statutory sanction for the ordinance, the City was without authority to declare any dilapidated building a nuisance unless it was so in fact. The rule is that, in the absence of express legislative sanction, a city is without authority to declare that a nuisance which is not so *per se* or at common law. Pye v. Peterson, 45 Texas, 312, 23 Am. Rep., 608; Spann v. City of Dallas, 111 Texas, 350, 19 A. L. R., 1387, 235 S. W., 513, 514; People v. City of Chicago, 261 Ill., 16, Ann. Cases, 1915A, 292, 49 L. R. A. (N. S.) 438, 442, 103 N. E., 609; Allison v. City of Richmond, 51 Mo. App., 133; Shreveport v. Leiderkrantz Society, 130 La., 802, 40 L. R. A. (N. S.), 75, 79; 20 R. C. L., pp. 389, 390, 414, 431, and notes; Dillon on Municipal Corp. (5th Ed.), sec. 684.

The ordinance declares that all dilapidated buildings are nuisances, even though none of the elements necessary to constitute a nuisance may exist. It does not require that such buildings shall injure, hurt or harm anyone. It is not limited to those instances where the di-

lapidated building may "hurt or annoy the lands, tenements or hereditaments of another." It is not confined to those dilapidated buildings which endanger life or health, violate the laws of decency or obstruct the reasonable and comfortable use of property, or which are subversive of public order, decency or morals, or which constitute an obstruction of public rights. It amounts merely to a general condemnation of dilapidated buildings as nuisances, and authorizes their destruction. It is apparent that, even with express legislative sanction, such a definition of a nuisance would be void. Not even the Legislature can declare that a nuisance which is not so in fact. Stockwall v. State, 110 Texas, 550, 554, 12 A. L. R., 1116, 221 S. W., 932; Spann v. City of Dallas, *supra;* Lawton v. Steele, 152 U. S., 133, 137, 38 L. Ed., 385; 20 R. C. L., pp. 486, 487; 4 R. C. L., p. 413; Evansville v. Miller, 146 Ind., 613, 38 L. R. A., 161, 45 N. E., 1054.

Other authorities hereafter cited support both the above propositions.

It is also well established that the mere unsightliness of a building, which is the usual and natural result of dilapidation, does not make it a nuisance, and a city would have no authority to declare it a nuisance for that reason alone. 20 R. C. L., p. 429, § 45; Whitmore v. Brown, 102 Me., 47, 9 L. R. A. (N. S.), 868, 120 Am. St., 454; see also Spann v. City of Dallas, *supra.*

So, if the ordinance be considered as having been enacted either under express legislative sanction or under the general police power of the City, it is void, and must fall.

The other provisions of Article 241 of the ordinances quoted above relate only to the method of ascertaining the existence of and the destruction of the nuisances defined by that article of the ordinances. They have no relationship to the various other paragraphs of Section 34 (i) of the charter.

The matters of procedure specified in the ordinance relate only to the abatement of the particular class of nuisance therein defined, and since the definition of a nuisance given in the ordinance is void, the method of procedure prescribed is void and must fall.

The terms of the ordinance were substantially followed by the City in this instance, except, perhaps, that some of the plaintiffs in error were not served with notice, with the result that the City Commissioners ordered the destruction of the building of plaintiffs in error. The building was ordered destroyed because it appeared that it was in a "dilapidated condition on account of age, use and lack of attention, and that in its present condition it was unsanitary and dangerous to persons leaving and going therein, and constituted a dangerous fire risk, and was a source of danger to adjoining buildings, and by reason of the foregoing was a nuisance."

The building in question, while in the fire limits when the proceedings against plaintiffs in error were begun, was not at the time

of its construction within these limits. It was lawfully constructed about thirty years previous to the passage of the ordinance placing it in the fire limits.

It is to be observed that the ordinance permits wooden buildings located outside the fire limits to be repaired, but denies to all others alike, whether constructed before or after the fire limit ordinance, the right of repair. The building having been lawfully erected before its locality was included within the fire limits, it could not, merely because of wooden construction, be condemned as a nuisance, nor could the right of repair be denied, unless the repair should amount to a substantial reconstruction of the building.

In so far as this ordinance denies the plaintiffs in error the right to repair their wooden building, lawfully erected prior to the inclusion of the territory in which it is located within the fire limits of the city, it takes their property without due process of law, and is null and void.

Since it is clear that the owners of a building lawfully erected have a vested property right in the building, it necessarily follows that they have the right to repair the building so as to keep it fit for use. To deny this is to deny the enjoyment of the property right itself. 28 Cyc., pp. 741, 742; Russell v. City of Fargo, 28 N. D., 300, 148 N. W., 610, 614; First National Bank v. Sarlls, 129 Ind., 201, 13 L. R. A., 481, 485, 28 Am. St., 185; Allison v. City of Richmond, 51 Mo. App., 133, 137; Klingler v. Bickel, 117 Pa., 326, 339, 11 Atl., 555; City of Denver v. Mullen, 7 Colo., 345, 3 Pac., 639; Health Department v. Dassori, 21 App. Div. (N. Y.) 348, 47 N. Y. Supp., 641; City of Buffalo v. Chadeayne, 134 N. Y., 163, 31 N. E., 443; Jackson v. Miller, 69 N. J. Eq., 182, 60 Atl., 1019, 1021; see also Wood on Nuisances (3d ed.), § 744.

The question of the right of the Legislature to authorize the condemnation of wooden buildings in fire districts, or their removal or destruction for a public purpose upon just compensation, is not before us, and we express no opinion on that question.

This ordinance, however, must fall for still another reason, in so far as it is made applicable to anything other than to a nuisance at common law or a nuisance *per se*. A wooden building, even though used as a livery stable, is not a nuisance *per se*. It can only become a nuisance by the use to which it is put or the state of repair in which it is maintained; but as to whether or not it is, even in these events, a nuisance, is a justiciable question, determinable only by a court of competent jurisdiction. The mere declaration of the City Commissioners that the building or its use constitutes a nuisance, does not make it so.

Many athorities previously cited support this proposition. Others follow: Spann v. City of Dallas, *supra;* 4 R. C. L., p. 413; 20 R. C.

L., pp. 414, 429, 430, 431; Evansville v. Miller, 146 Ind., 613, 38 L. R. A., 161, and notes; Joyce on Nuisances § 334; Wood on Nuisances, (3d ed.) § 744; Yates v. Milwaukee, 10 Wall. (U. S.) 497, 19 L. Ed., 984.

In the last cited case Mr. Justice Miller, speaking for the United States Supreme Court, says:

"But the mere declaration by the city council of Milwaukee that a certain structure was an encroachment or obstruction did not make it so, nor could such declaration make it a nuisance unless it in fact had that character. It is a doctrine not to be tolerated in this country, that a municipal corporation, without any general laws either of the city or of the State, within which a given structure can be shown to be a nuisance, can, by its mere declaration that it is one, subject it to removal by any person supposed to be aggrieved, or even by the city itself. This would place every house, every business, and all the property of the city, at the uncontrolled will of the temporary local authorities."

Other authorities in support of the foregoing proposition will be cited later.

Another vice of this ordinance is that it purports to make the action of the City Commissioners, in declaring the building a nuisance, final. The right of abatement is made to rest alone upon the findings of the City Commissioners. They are made court, jury, and executive authority,—all in one. This is the construction which the City has put upon its own ordinance, and the language is sufficient to sustain that construction. The ordinance does not authorize an action at law or equity to abate the alleged nuisance when the owner refuses to do so, but the officers of the City are required to abate it *vi et armis*,—to go upon the condemned premises and destroy them. Such arbitrary authority cannot, under our form of government, be conferred upon the City Commissioners. A citizen's property, not a nuisance within itself or under the common law, cannot be destroyed without the judgment of a court finding that it is in fact a nuisance. The opinion of the City Commissioners that the property of plaintiffs in error is a nuisance, is not due process. It is not process at all. It has no more vitality than the opinion of other citizens as against the consent of plaintiffs in error. If in fact this property is a nuisance, the decree of a court of competent jurisdiction must first adjudge it to be so before the property may be lawfully destroyed. Stockwell v. State, 110 Texas, 550, 554, 221 S. W., 932; City of Forney v. Mounger, 210 S. W., 240, 241; Dibrell v. City of Coleman, 172 S. W., 550; City of Dallas v. Allen, 40 S. W., 324; Grossman v. City of Oakland, 30 Ore., 478, 60 Am. St., 832, 36 L. R. A., 593, and notes, 595; State v. Mayor, 56 N. J. L., 474, 23 L. R. A., 685; People v. City of Yonkers, 140 N. Y., 1, 37 Am. St., 522, 23 L. R. A., 481; Hutton v. City of Camden, 39 N. J. L., 122, 23 Am. Rep., 203; City

of Denver v. Mullen, 7 Colo., 345, 355, 3 Pac., 693; Dillon on Municipal Corp., §§ 684, 690, p. 1047; Joyce on Nuisance, § 333; Wood on Nuisances (3d ed.), § 744.

The case of Stockwell v. State, 110 Texas, 550, is precisely in point. The statute involved in that case, Art. 4459 R. S., related to the destruction of diseased fruit trees. It is unnecessary to recite the terms of the Article. It is sufficient to say that the effect of it was to make the determination of the Commissioner of Agriculture as to the existence of the disease and the destruction of the trees as a nuisance final. This Court declined to sustain the validity of this statute, in so far as its effect was to deny a hearing before the courts on the question as to whether or not the particular trees involved constituted a nuisance which ought to be summarily destroyed. In that case this Court, speaking through Chief Justice Phillips, in part said:

"The trial court denied the defendant a hearing evidently upon the theory that it was competent for the Legislature to invest the Commissioner with such unlimited authority, and this view was affirmed by the Court of Civil Appeals. In our opinion the Commissioner could not be clothed with any such arbitrary power.

"The State, in the exercise of its public power, may denominate certain things to be public nuisances, and because of their having that character provide for their summary abatement. This power is limited to declaring only those things to be such nuisances which are so in fact, since even the State may not denounce that as a nuisance which is not in fact. Tiedeman's Limitation of Police Power, section 122a. The police power is subordinate to the Constitution, as is every other power of the government. Where the Legislature has found and defined as expressed in its statute, a certain thing to be a public nuisance, only in clear cases would courts be warranted in going behind its findings and determining the contrary. But whether something not defined as a public nuisance by the statute is such under its general terms, is undoubtedly a judicial question.

"The State may also remit to such agencies as health boards, or other proper administrative officers, the authority of determining whether other things constitute public nuisances, with the power to abate them. But where this is done, the determination of such boards or officers is not conclusive and cannot be made so, unless it be with respect to something having the nature of a public emergency, threatening public calamity, and presenting an imminent and controlling exigency before which, of necessity, all private rights must immediately give way. If this were not true, all property would be at the uncontrolled will of temporary administrative authorities, exercising, not judicial powers, but purely executive powers. The result would be to subject the citizen's property solely to executive authority, putting it beyond the protection of the courts, and depriv-

ing the courts of their essential power of determining what, under the written law, is lawful and what is not—declaring the law of the land—and adjudging property rights accordingly.

"In speaking of the assertion that the declaring by such administrative authorities of certain things, not presenting a public emergency, to be public nuisances, must be accepted as final and conclusive, Judge Miller, in Yates v. Milwaukee, 10 Wallace 497, characterized it as 'a doctrine not to be tolerated in this country'.

"Judge Cooley says this upon the subject, citing numerous authorities:

" 'Whether any particular thing or act is or is not permitted by the law of the State must always be a judicial question, and therefore the question of what is and what is not a public nuisance must be judicial, and it is not competent to delegate it to the local legislative or administrative boards.' Cooley's Constitutional Limitations, p. 742 note.

"In Wood on Nuisances, section 744, this is announced with respect to conferring such final authority on municipalities—being equally applicable where the agency for the exercise of the authority is an administrative officer:

" 'It would, indeed, be a dangerous power to repose in municipal corporations to permit them to declare, by ordinance or otherwise, anything a nuisance, which the caprice or interests of those having control of its government might see fit to outlaw, without being responsible for all the consequences, and, even if such power is expressly given by the legislature, it is utterly inoperative and void, unless the thing is in fact a nuisance, or was created or erected after the passage of the ordinance, and in defiance of it. . . .

" 'Therefore, except in cases of great public emergency, when the emergency may safely be regarded as so strong as to justify extraordinary measures upon the ground of paramount necessity, or when the use of property complained of is so clearly a nuisance as to leave no room for doubt upon the subject, it is the better course to secure an adjudication from the courts before proceeding to abate it.' "

\*    \*    \*    \*    \*    \*

Under the contest made by his pleading, before the property of the defendant could be summarily destroyed, he was entitled to a judicial hearing and decision as to whether it ought to be destroyed. As applied to such a case, nothing less would amount to due process of law, without which the Bill of Rights declares no citizen shall be deprived of his property."

Since the constituent parts of this ordinance are not separable, and its total effect is to make final the determination of the City Commissioners, as to buildings such as the one here involved, not nuisances *per se,* it denies due process. The fact that plaintiffs in error can

appeal to a court of equity for injunctive relief against the trespasses of the City does not free the ordinance of its vice. The ordinance within itself authorizes the taking of property without due process, and it must therefore fall, although a court of equity may properly step in and prevent its execution.

We are not to be understood as holding that a municipality cannot enact a valid ordinance providing for the summary abatement, without the necessity of a judicial hearing, of certain classes of nuisances. On the contrary, we recognizes the general doctrine that in the case of a public emergency,—as, for example, a fire or raging pestilence, or other threatening public calamity, presenting an imminent and controlling exigency, before which, of necessity, all private rights must immediately give way, a municipality may summarily destroy property to abate or prevent the impending injury. Stockwell v. State, *supra;* Keller v. City of Corpus Christi, 50 Texas, 614, 32 Am. Rep., 613; City of Dallas v. Allen, cited above.

Nor have we limited in any degree the rule as to the summary destruction without judicial process of instrumentalities designed and prepared for the commission of crime. 20 R. C. L., p. 487.

Nor the removal or demolition of buildings constructed in violation of a valid law or ordinance. 20 R. C. L., p. 488; 4 R. C. L., pp. 402, 403.

What we have held here is that this ordinance, general in its terms, embracing all dilapidated buildings, does not define any object which is subject to summary destruction, and is therefore void.

In view of the invalidity of the ordinance before us, the pleadings of defendants in error do not present a defense which would authorize the summary abatement of the building in controversy, even if such abatement could be had under the charter independent of the ordinance, a question unnecessary for us to determine.

In view of the reversal of the case, it is proper for us to say that the proceedings of the Board of Commissioners of the City and the report of its inspectors relative to the condition and condemnation of the building involved are not admissible in evidence against plaintiffs in error, at least in the absence of a claim for punitive damages. Whether or not the building is a nuisance is to be established by legal and competent evidence, in the same manner as any other fact. Hutton v. City of Camden, 39 N. J. L., 122, 23 Am. Rep., 203, 210; State v. Mayor of Vineland, 56 N. J. L., 474, 23 L. R. A., 685, 686.

In this proceeding the burden is on the City to allege and establish the contention that the building involved is in fact a nuisance. City of Dallas v. Allen, 40 S. W., 324; Lawton v. Steele, 152 U. S., 133, 142, 38 L. Ed., 285; Joyce on Nuisances, § 347; Savannah v. Mulligan, 95 Ga., 323, 29 L. R. A., 303; Hutton v. City of Camden, *supra;* Wood on Nuisances, (3d ed.), §§ 766, 767, 768.

The power given municipalities to abate nuisances is not an unrestricted power. The abatement must be limited to the necessity of the case, and no wanton or unnecessary injury to the property or rights of individuals must be permitted.

While a building may be destroyed, under certain circumstances, or if erected in violation of a valid ordinance, yet if lawfully erected, as in this case, it can not be demolished if the nuisance alleged against it can in any other way,—as, for example, by cleaning, disinfection or repair, be abated. Joyce on Nuisances, §§ 346, 349, 350; Miller v. Burch, 32 Texas, 209; Health Dept. v. Dassori, 21 App. Div. (N. Y.), 348, 355, 47 N. Y. Supp., 641.

The building here involved having been lawfully erected, if the nuisance charged against it may be abated by repair, then that remedy should be first awarded. Authorities *supra.*

Prior to the entry of the order for the destruction of the building here involved, plaintiffs in error made application to the City Commissioners for permission to repair it and thus obviate the condition about which complaint was made. This application was refused.

Section 177 of the Building Code of the City of Galveston, adopted October 14, 1914, reads as follows:

"It shall not be lawful, *except when otherwise ordered by the Board of Commissioners,* to erect, build, place, enlarge or repair any wooden building or structure, or any building or structure whatsoever, constructed of wood or with a wooden roof, or arrange, keep, locate or establish any lumber or wood yard, or place for the purpose of carrying on the business of lumber dealing, or for the storage of cord wood, except in quantities of less than twenty cords thereof, in this city, within the following boundaries:" (Here follow the boundaries).

It will be observed that this ordinance lays down no rule of action for the government of the City Commissioners in granting or rejecting applications for permits to repair wooden buildings within the fire limits of the City, such as the one here in question. A law is said to be a rule of action, but here no rule is given. The ordinance, therefore, falls short of being a law. It leaves to the arbitrary determination of the Commissioners when they will grant leave to repair a building, or when they will refuse the application, and is therefore, to that extent, void. Spann v. City of Dallas, 111 Texas, 350, 235 S. W., 513, 517; State v. Tenant, 110 N. C., 609, 15 L. R. A., 423, 14 S. E., 387; Yick Wo v. Hopkins, 118 U. S., 356, 30 L. Ed., 220; City of Montgomery v. West, 102 Me., 47, 65 Atl., 516, 9 L. R. A. (N. S.), 659, and notes; City of Richmond v. Dudley, 129 Ind., 201, 13 L. R. A., 587, 28 N. E., 434.

The case of Spann v. City of Dallas, 111 Texas, 350, 235 S. W.,

513, 517, is directly in point. In that case this Court, speaking through Chief Justice Phillips, said:

"A further vice in the ordinance is that even with the necessary consent of the property owners of the district, a business house may not be erected within it except upon the building inspector's approval of the design of the building. No rule or standard is given to govern the applicant in fashioning the design of his building or to govern the inspector in approving or rejecting it. The ordinance leaves it to the unbridled discretion of the inspector to disapprove the design, resulting in a refusal of the permit and the prohibition of the building. This leaves the right to construct the building subject to the arbitrary discretion of the inspector, and of itself renders the ordinance void. The very essence of American constitutions is that the material rights of no man shall be subject to the mere will of another. Yick Wo. v. Hopkins, 118 U. S., 356, 6 Sup. Ct. 1064, 30 L. Ed., 220."

A further discussion of this particular proposition appears unnecessary. The ordinance here in question contains the identical vice justly condemned by Chief Justice Phillips in the opinion just quoted from.

This ordinance being void in so far as it relates to the subject of repair, no application to the City Commissioners for permission to repair the building in question was necessary. The plaintiffs in error are at liberty to repair the building without making an application, and regardless of whether it may be granted or refused. It is unnecessary that a mandamus issue requiring the City Commissioners to grant the application, for the reason that the City Commissioners, under this ordinance, in view of the record before us, have no rights in the matter nor duty to perform relative thereto.

The judgments of the trial court and Court of Civil Appeals are reversed, and the cause remanded to the District Court.

*Reversed and remanded.*