

# The Attorney General of Texas

November 5, 1984

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711-2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

1309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Lloyd Doggett
Chairman
Subcommittee on Consumer Affairs
Texas State Senate
P. O. Box 12068, Capitol Station
Austin, Texas    78711

Opinion No. JM-226

Re: Whether article 1175, section 19, V.T.C.S., authorizes a home rule city to adopt and enforce regulations which are applicable outside city limits and which provide standards for the safe storage of hazardous materials over the watersheds in and surrounding the home rule city

Dear Senator Doggett:

You ask whether section 19 of article 1175, V.T.C.S., authorizes a home rule city to adopt regulations, applicable outside of city limits, which set standards for the safe storage of hazardous materials in the watersheds in and surrounding the home rule city. We conclude (1) that a home rule city may define as a nuisance the storage of hazardous substances near its water supply when it has a well-founded apprehension of danger from such storage within its municipal limits and within five thousand feet of its boundaries, and (2) that a home rule city may promulgate standards for the safe storage of hazardous materials to prevent water-supply pollution in the watersheds within the home rule city's extraterritorial jurisdiction.

Article 1175 emphasizes that home rule cities shall have "full power of local self-government" and enumerates, "for greater certainty," particular powers possessed by home rule cities. Section 19 of article 1175 provides as follows:

> Each city shall have the <u>power to define all nuisances and prohibit the same within the city and outside the city limits for a distance of five thousand feet</u>; to have power to police all parks or grounds, lakes and the land contiguous thereto and used in connection therewith, speedways, or boulevards owned by said city and lying outside of said city; <u>to prohibit the pollution of any stream, drain or tributaries thereof, which may constitute the source of water supply of any city</u>

> and to provide for policing the same as well as to
> provide for the protection of any water sheds and
> the policing of same; to inspect dairies, slau-
> ghter pens and slaughter houses inside or outside
> the limits of the city, from which meat or milk is
> furnished to the inhabitants of the city.
> (Emphasis added).

Two clauses are relevant to your question: the power to define nuisances and the power to prohibit water supply pollution. Your request centers on interpreting the nature of these powers, on whether any other provisions have preempted the powers, and on whether the omission of "inside or outside the limits of the city" from the above-quoted and underscored clause which deals with pollution prevention in any way limits such control to within a home rule city's boundaries.

Article XI, section 5 of the Texas Constitution granted broad powers of self-government to cities qualifying for "home rule." Within their boundaries, home rule cities derive their power from the constitution rather than from legislation. See Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641, 643 (Tex. 1975). As a result, the scope of their power within their boundaries depends not upon legislative grants of power but upon express or clearly implied limitations in the constitution, in the general laws, and in individual city charters. Lower Colorado River Authority v. City of San Marcos, supra. The presumption in favor of home rule cities' powers within their boundaries also affects interpretation of their extra-territorial powers.

A home rule city must have express or necessarily implied statutory authority to exercise power outside its boundaries. City of Austin v. Jamail, 662 S.W.2d 779, 782 (Tex. App. - Austin 1983, writ dism'd); see Treadgill v. State, 275 S.W.2d 658, 662-63 (Tex. Crim. App. 1954) (on motion for rehearing); Royal Crest, Inc. v. City of San Antonio, 520 S.W.2d 858, 864-65 (Tex. Civ. App. - San Antonio 1975, writ ref'd n.r.e.). Once such power exists, however, any limits on its exercise must appear with "unmistakable clarity." City of Corpus Christi v. Continental Bus Systems, Inc., 445 S.W.2d 12, 17 (Tex. Civ. App. - Austin 1969, writ ref'd n.r.e.) per curiam, 453 S.W.2d 470 (Tex. 1970); see, e.g., City of Amarillo v. Griggs Southwest Mortuary, Inc., 406 S.W.2d 230 (Tex. Civ. App. - Amarillo 1966, writ ref'd n.r.e.); Cameron v. City of Waco, 8 S.W.2d 249 (Tex. Civ. App. - Waco 1928, no writ).

Section 19 of article 1175 does not by its terms limit water pollution prevention to within a home rule city's boundaries merely because of the omission of the words "inside or outside the limits of the city." Statutes must be construed as a whole and one provision will not be given a meaning out of harmony or inconsistent with other provisions even if the provision might be susceptible to such construction if standing alone. City of West Lake Hills v. Westwood Legal Defense Fund, 598 S.W.2d 681 (Tex. Civ. App. - Waco 1980, no

writ); see Merchants Fast Motor Lines, Inc. v. Railroad Commission of Texas, 573 S.W.2d 502 (Tex. 1978). With regard to the other enumerated powers, section 19 expressly provides for their exercise outside the city limits. Thus, the overall import of article 1175, section 19, is to provide for the exercise of particular extraterritorial powers.

Article 1176 further clarifies the effect of article 1175 by providing that

> [t]he enumeration of powers hereinabove made shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of local self-government, provided that such powers shall not be inhibited by the State Constitution.

Thus, the omission of "inside or outside the limits of the city" from the water pollution-prevention clause of section 19 does not limit the exercise of such power to within a home rule city's boundaries.

To the contrary, the water pollution prevention powers are not necessarily limited to five thousand feet. The court in Treadgill v. State, 275 S.W.2d at 661, indicated in dicta that the omission of the inside or outside language was intended to authorize water supply pollution prevention "without limit as to distance from the city limits." Section 19 refers to both nuisance-defining and water pollution prevention; thus, given that pollution of a public water course is a public nuisance, Goldsmith & Powell v. State, 159 S.W.2d 534 (Tex. Civ. App. - Dallas 1942, writ ref'd), and assuming that the clause is not superfluous, some additional power was intended. Every legislative provision will be given effect, if possible. Independent Life Insurance Company of America v. Work, 77 S.W.2d 1036 (Tex. 1934).

Nevertheless, the watersheds of some watercourses can extend for hundreds of miles, and home rule cities' general police powers, to promote and protect the general health, safety, and welfare of the people, have not been extended beyond their extraterritorial jurisdiction as established by section 3 of article 970a, V.T.C.S. Thus, when taken together, articles 1175 and 970a authorize a home rule city to define nuisances and to prevent water supply pollution within its boundaries and within five thousand feet of its boundaries, and, additionally, to prevent pollution of its water supply in its extraterritorial jurisdiction where such jurisdiction is greater than five thousand feet.

Questions remain about the nature of section 19 powers: (1) whether they encompass regulating the safe storage of hazardous materials, and (2) whether any other constitutional or statutory provisions, with "unmistakable clarity," limit the nuisance-defining and water pollution prevention clauses of section 19. Preliminary to deciding the latter question, whether either power has been superseded

or preempted, a basic understanding of the powers is necessary. Because pollution of a public watercourse is a nuisance, Goldsmith & Powell v. State, supra, the powers overlap considerably. Both powers encompass regulating the safe storage of hazardous materials in the watersheds surrounding a home rule city.

Absent express authority, a city cannot declare that a subject of regulation is a nuisance when it is not so per se or at common law. Crossman v. City of Galveston, 247 S.W. 810, 812 (Tex. 1923). Article 1175, section 19, expressly authorizes home rule cities to define nuisances within their boundaries and within five thousand feet of their boundaries. Treadgill v. State, 275 S.W.2d at 661; Stoughton v. City of Fort Worth, 277 S.W.2d 150 (Tex. Civ. App. - Fort Worth 1955, no writ); see also Vianello v. State, 627 S.W.2d 530 (Tex. App. - Fort Worth 1982, no pet.). However, even with express authority, a city cannot act arbitrarily and cannot declare that a particular use of property is a nuisance which is not so in fact. Crossman v. City of Galveston, supra. If a use is a hazard to the health, safety, and welfare of the public, it can constitute a nuisance in fact. Hart v. City of Dallas, 565 S.W.2d 373, 379 (Tex. Civ. App. - Tyler 1978, no writ). Nevertheless, a particular violation of a city's nuisance ordinance which is not a nuisance per se or at common law would be a question for a court of competent jurisdiction. See Crossman v. City of Galveston, supra; Hart v. City of Dallas, supra; Hill v. Villarreal, 383 S.W.2d 463 (Tex. Civ. App. - San Antonio 1964, writ ref'd n.r.e.); Air Curtain Destructor Corp. v. City of Austin, No. 12-83-0108-CV (Tex. App. - Tyler Aug. 23, 1984).

As indicated, a home rule city may declare a public nuisance that which is a hazard to the health, safety, and welfare of the public. Vianello v. State, supra; Hart v. City of Dallas, supra; Hill v. Villarreal, supra. An object of regulation need not affect an entire city in order to constitute a nuisance. Stoughton v. City of Fort Worth, 277 S.W.2d at 153. A necessary and useful business is not itself a nuisance when operated in a manner not harmful to the public health and general welfare, Henson v. Denison, 546 S.W.2d 898, 901 (Tex. Civ. App. - Fort Worth 1977, no writ); City of Carthage v. Allums, 398 S.W.2d 799, 804 (Tex. Civ. App. - Tyler 1966, no writ); however, a city may proscribe harmful operations. See City of Houston v. Johnny Frank's Auto Parts Co., 480 S.W.2d 774 (Tex. Civ. App. - Houston [14th Dist.] 1972, writ ref'd n.r.e.). The location and manner of the conduct of businesses involving hazardous substances have long been subject to state and city police power. See, e.g., Dudding v. Automatic Gas Co., 193 S.W.2d 517 (Tex. 1946) (storage of liquified butane gas); Treadgill v. State, supra (fireworks); Vianello v. State, supra (dog kennels); Swain v. Board of Adjustment of University Park, 433 S.W.2d 727 (Tex. Civ. App. - Dallas 1968, writ ref'd n.r.e.) (zoning of gasoline filling station). Thus, a home rule city may regulate the method of storage of hazardous materials pursuant to section 19.

Further, in some instances, a city could determine that the only "safe" storage of hazardous materials is <u>no</u> storage near its water supply or the supply's tributaries -- that such storage is a nuisance in fact.  Certain substances and uses of property, hazardous enough to cause a well-founded apprehension of danger, may be totally prohibited from the specific areas in which they create a hazard.  <u>Treadgill v. State</u>, <u>supra</u>; <u>Stoughton v. City of Port Worth</u>, <u>supra</u>.  Just as the storage of fireworks and flammable liquids may be prohibited because of a well-founded apprehension of danger to people and property nearby, so may a home rule city prohibit the storage of substances near its water supply which, if introduced into the city's water supply, would endanger the health, safety, and welfare of the public.

Thus, both the method of storage of hazardous substances and the location of such storage may be regulated in sensitive areas pursuant to section 19's nuisance clause, within the city's boundaries and within five thousand feet of its boundaries.  Regulation of unsafe storage practices may also be enacted pursuant to section 19's water pollution prevention clause.

As indicated, pollution of a public watercourse is a nuisance; thus, the water supply pollution prevention clause of section 19 also encompasses prohibiting as a nuisance the storage of certain hazardous materials in the watersheds of the city's water supply and defining as a nuisance certain unsafe storage practices which endanger the home rule city's water supply.  However, the water pollution prevention clause is somewhat broader in nature.  Water pollution prevention may properly include regulation of activities not necessarily constituting a nuisance.  <u>See, e.g., City of Austin v. Jamail</u>, <u>supra</u>.

Nevertheless, general constitutional protections prohibit unreasonable ordinances and arbitrary applications of police power. See <u>City of Brookside Village v. Comeau</u>, 633 S.W.2d 790 (Tex. 1982), <u>cert. denied</u>, 459 U.S. 1087 (1982); <u>City of Austin v. Teague</u>, 570 S.W.2d 389 (Tex. 1978); <u>Crossman v. City of Galveston</u>, <u>supra</u>.  The only question remaining is whether any specific state or federal laws limit these powers of a home rule city.  As indicated previously, the test is whether limits on the exercise of these powers appear with "unmistakable clarity."  <u>City of Corpus Christi v. Continental Bus Systems, Inc.</u>, <u>supra</u>.

On the federal level, the Resource Conservation and Recovery Act of 1976, 42 U.S.C. §§6901, <u>et seq.</u>, as amended by the Solid Waste Disposal Act Amendments of 1980, (hereinafter RCRA), was intended as a comprehensive scheme designed to deal with an alarming increase in the uncontrolled generation, transportation, and disposal of hazardous wastes.  Section 6929 of the RCRA deals with the retention by the states of certain authority as follows:

> Upon the effective date of regulations under this subchapter no State or political subdivision may impose any requirements less stringent than

those authorized under this subchapter respecting the same matter as governed by such regulations, except that if application of a regulation with respect to any matter under this subchapter is postponed or enjoined by the action of any court, no State or political subdivision shall be prohibited from acting with respect to the same aspect of such matter until such time as such regulation takes effect. <u>Nothing in this chapter shall be construed to prohibit any State or political subdivision thereof from imposing any requirements, including those for site selection, which are more stringent than those imposed by such regulations.</u> (Emphasis added).

Thus, relevant federal law does not prevent Texas home rule cities from enacting "more stringent" provisions than federal regulations. See <u>Nuclear Engineering Co. v. Scott</u>, 660 F.2d 241, 249 n.10 (7th Cir. 1981), <u>cert. denied</u>, 455 U.S. 993 (1981). See also <u>Mississippi Commission on Natural Resources v. Costle</u>, 625 F.2d 1269, 1275 (5th Cir. 1980). Similarly, state law does not prevent such local regulation.

The state's entry into a field of legislation does not automatically preempt that field from city regulation. <u>City of Brookside Village v. Comeau</u>, 633 S.W.2d at 796. Local regulation, ancillary to and in harmony with the general scope and purpose of state enactments, is acceptable. <u>City of Brookside Village v. Comeau</u>, supra; see also <u>City of Beaumont v. Fall</u>, 291 S.W. 202 (Tex. 1927); <u>City of Beaumont v. Bond</u>, 546 S.W.2d 407 (Tex. Civ. App. - Beaumont 1977, writ ref'd n.r.e.).

Two state public health statutes relate to the storage of hazardous materials near water supplies: articles 4477-1 and 4477-7, V.T.C.S. Section 23(a) of article 4477-1, however, expressly indicates that the act does not purport to limit the authority of home rule cities to enact more stringent ordinances. Similarly, section 10 of article 4477-7 indicates that its provisions are cumulative of other laws and expressly disclaims any limiting effect on the authority of local governments.

The remaining source of potential state preemption is the Texas Water Code. The code contains no express "non-preemption" clause. However, no provision of the code limits, with unmistakable clarity, the powers of home rule cities, as enumerated in section 19 of article 1175, to regulate the storage of hazardous materials which threaten its water supply or any contributing water source so long as the home rule city's regulation does not purport to lessen the pollution standards provided for in the code.

The primary antipollution provisions of the code appear in chapter 26. Water Code §§26.001, et seq. Section 26.011 provides, in pertinent part, that

> [e]xcept as otherwise specifically provided, the department shall administer the provisions of this chapter and shall establish the level of quality to be maintained in, and shall control the quality of, the water in this state as provided by this chapter. (Emphasis added).

One section is specifically preemptive. Section 26.023 grants the Texas Water Development Board "the sole and exclusive authority to set water quality standards for all water in the state." Two other provisions, sections 26.124(a) and 26.177, specifically prescribe methods of local government participation in enforcement of code provisions. All three of these provisions require explication.

Section 26.023 is the only relevant provision of the Water Code clearly intended to be preemptive. By granting the board sole and exclusive authority to set, by rule, water quality standards, the code does not prohibit a home rule city from regulating the location of and safe storage standards for hazardous materials in its watersheds. The Texas Supreme Court encountered a much closer question in City of Brookside Village v. Comeau, 633 S.W.2d at 796, where the court found that state and federal regulation of the construction, safety, and installation of mobile homes did not preempt consistent city zoning ordinances regulating the location of mobile homes and the construction, operation, and maintenance of mobile home parks.

The remaining provisions deal primarily with enforcement of code provisions rather than enforcement of independent, consistent, regulation pursuant to other law. Section 26.124(a) provides for enforcement of section 26.121 (dealing with unauthorized discharges) by local governments but expressly limits such enforcements to the local government's boundaries, exclusive of extraterritorial jurisdiction. City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 680-81 (Tex. 1979). Although section 26.121 may itself be broad enough to reach accidental "discharges" caused by unsafe storage practices, it does not preempt regulation by home rule cities. See City of Brookside Village v. Comeau, supra. Section 26.124 does not purport to limit independent regulation which is otherwise authorized by law.

The final provision, section 26.177, deals with water pollution control by cities and expressly authorizes enforcement by cities of water pollution control and abatement programs within their extraterritorial jurisdiction. City of Austin v. Jamail, supra. Although the city of Austin based its authority on section 26.177 rather than on article 1175, the case provides general support for local ordinances which are consistent with code provisions.

The decision about section 26.177 in <u>City of West Lake Hills v. Westwood Legal Defense Fund</u>, <u>supra</u>, is inapposite here. The court held that section 26.177 does not specifically grant the power to license private sewage facilities located within the city's extraterritorial jurisdiction because other Water Code provisions <u>specifically</u> granted the power to the Texas Water Commission. Licensing authority is not a power that two different, independent governmental bodies can easily and consistently exercise. Further, the court in <u>West Lake Hills</u> dealt with a general law city. Home rule cities have the benefit of article 1175 and are subject to a different test for limits on their power; state statutory limits on home rule cities must appear with unmistakable clarity. The Texas Water Code does not prevent home rule cities from regulating the storage of hazardous materials within their extraterritorial jurisdiction pursuant to section 19 of article 1175.

## SUMMARY

Pursuant to section 19 of article 1175, V.T.C.S., home rule cities may regulate the location and storage of hazardous materials in their watersheds within their boundaries and within their extraterritorial jurisdiction.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Jim Moellinger
Nancy Sutton