Gladys O'Neal JONES, Appellant,

v.

The CITY OF ODESSA, Appellee.

No. 6704.

Court of Civil Appeals of Texas,
El Paso.

Nov. 29, 1978.

Rehearing Denied Dec. 20, 1978.

Gloria T. Svanas, Odessa, for appellant.

Joel V. Roberts, City Atty., Odessa, for appellee.

## OPINION

OSBORN, Justice.

The Appellant filed suit in District Court to recover damages resulting from the destruction of buildings under an Unsafe Buildings Ordinance. Based upon jury findings that the residence was a "nuisance," which "could not have been correct-

ed without making repairs that would have amounted to substantial reconstruction" and "none" as to damages for mental pain and mental anguish, the trial Court entered a take nothing judgment. We affirm.

Mrs. Jones had at one time resided in Odessa, but she has lived in Fort Worth since 1969. She has been disabled and unemployed since that time. *Jones v. Milburn,* 553 S.W.2d 779 (Tex.Civ.App.—El Paso 1977, no writ). She owned the main dwelling at 312 Fitch Street, Odessa, Texas, as well as a smaller house and wellhouse at the same address and on the back of the lot. She is still involved in litigation over earlier repairs to the building in 1965. *Jones v. North American Acceptance Corporation,* 442 S.W.2d 492 (Tex.Civ.App.—El Paso 1969, no writ). The main residential building had been rented until a few months before its destruction. All three buildings were destroyed after a determination by the City Council in December, 1973, that the buildings were unsafe and were found to be a public nuisance. The Ordinance which provides for their destruction recites that the buildings constitute a hazard to the public health and safety.

The City called several witnesses to testify as to the condition of the buildings. Ron Ester, the City building inspector, said the main residence had no glass in the windows, the doors were open, there were holes in the floor, and the ceiling was falling down. He said the house had been vandalized and all waterlines removed. The other buildings were said to be in similar condition. Clarence Lawson, City fire inspector, gave a similar description of the main residence and said it was a fire hazard. Johnny Wilson, the City health inspector, said the main building was falling in from the ceiling and the rear storage building was substantially unsafe. James M. Allen, with the Police Department, testified the main residence had been vandalized and gutted, and that it would cost more to repair than the building was worth. Willie Hammond, a member of the City Council in 1973, said the main building was an eyesore, a nuisance, and a health hazard. He said it was not in a

condition to be repaired. Everyone testified the buildings were vacant, and Mr. Ester said the personal property remaining in the residence was just junk with no market value. Mrs. Jones acknowledged that the siding on the building had come loose in several places, and said the roof leaked and she had placed a No. 3 tub under a hole she had cut in the ceiling to catch water. She acknowledged that the leaks had damaged the interior of the structure.

Based upon reports by the City employees, the Board of Survey, established by the Unsafe Buildings Ordinance, recommended to the City Council the destruction of the buildings. The City Council then enacted an ordinance for their destruction.

The Unsafe Buildings Ordinance, under which these buildings were destroyed, provides:

> All buildings or structures that are or hereafter shall become unsafe, unsanitary, or deficient in adequate exit facilities, or which constitute a fire hazard, or are otherwise dangerous to human life or public welfare by reason of illegal or improper use, occupancy or maintenance, shall be deemed unsafe buildings. All unsafe buildings shall be taken down and removed or else made safe and secure as directed by the building official. A vacant building which is unguarded or open at door or window shall be deemed an unsafe building within the meaning hereof."

This Ordinance requires notice that a building has been classified as unsafe be sent to the owner at the owner's last known address. The Ordinance also provides that if such notice be returned unclaimed, notice shall be published in a newspaper of general circulation in the City of Odessa, and in addition notice posted on the front door of the unsafe building.

Mrs. Jones presents six different points of error claiming lack of notice and denial of procedural due process in these proceedings. She testified she never received any notice prior to the destruction of these buildings. The City sent three notices, one on each building. One was returned, and apparently the other two were never delivered or returned. Notice was posted on the buildings in accordance with the requirements of the Ordinance. In addition, Mr. Hammond testified that when the City Council acted on the recommendation of the Board of Survey and enacted the Ordinance for destruction of these buildings, there had been a newspaper publication. Although this testimony was not the best evidence of the publication, no objection was made on that ground, and it is some evidence of compliance with the Ordinance requirement on notice.

Procedural due process requires notice reasonably calculated to apprise the party of the action and an opportunity to be heard. *Armstrong v. Manzo,* 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Where a party's address is actually known by the city, notice by publication does not constitute adequate notice. *City of Houston v. Fore,* 412 S.W.2d 35 (Tex.1967). In this case, the notice was mailed to the last known address in Fort Worth and returned. Under those circumstances, we conclude that constructive notice by both posting and publication met the minimum due process requirements. *Mullane v. Central Hanover Bank and Trust Company,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Yoakum County Water Control and Improvement District v. First State Bank,* 449 S.W.2d 775 (Tex.1969). In this case, the Appellant did not request a special issue as to whether the City had complied with the Ordinance requirements as to publication and posting, where the evidence established that the notice sent to the last known address had been returned unclaimed. The trial Court having entered judgment for the City, there is an implied finding of compliance and there is sufficient evidence to support that finding. Points of Error Nos. 7, 10, 14, 16, 20 and 24, all with regard to the notice and procedural due process requirements, are overruled.

The Appellant next attacks the constitutionality of the Unsafe Buildings Ordinance under which the City proceeded in this case. The basic complaint is that the Ordinance

permits a destruction of property without a prior judicial determination that the property is a nuisance. A similar contention was presented and overruled in *Traylor v. City of Amarillo, Texas,* 492 F.2d 1156 (5th Cir. 1974). There the Court said: "we do not believe that the United States Constitution requires that a judicial determination precede demolition of property found to be a nuisance." We agree and so hold insofar as federal rights are concerned.

■ As to rights under the State Constitution, Appellant relies primarily upon the language in *Hart v. City of Dallas,* 565 S.W.2d 373 (Tex.Civ.App.—Tyler 1978, no writ), and the earlier cases of *Crossman v. City of Galveston,* 112 Tex. 303, 247 S.W. 810 (1923), and *City of Houston v. Lurie,* 148 Tex. 391, 224 S.W.2d 871 (1949), which are cited in the *Hart* case. Certainly, there is language in those cases which suggests that a Court must first adjudge property to be a nuisance before it may be lawfully destroyed. But we do not read those cases to mean that destruction of property without a prior judicial determination makes the City absolutely liable without any defense when the question of value or damages is finally litigated. We believe those cases hold that if destruction occurs before a judicial determination is made on the issue of nuisance, the City proceeds at its own peril, but may defend, when sued for damages, on the grounds that the property destroyed was in fact a nuisance. That was the holding in *City of Texarkana v. Reagan,* 112 Tex. 317, 247 S.W. 816 (1923), which was decided the same day as the *Crossman* case. In that opinion, the Court said:

"If the building was in fact a nuisance, the city may defend on that ground, but its own definition of a nuisance, set forth in its ordinance, is not conclusive and binding on the courts. The question as to whether or not the building is a nuisance remains a justiciable question. Authorities supra. The action of the city council with reference to this building was no warrant for its destruction, and the proceedings of the city council leading up to the destruction of the building are not admissible in evidence in favor of the city in a suit for actual damages only. Whether or not the building here in controversy was in fact a nuisance is to be established by legal and competent evidence, in the same manner as any other fact, and the burden is upon the city to do this. *Crossman v. City of Galveston,* supra, and authorities there cited."

■ We hold that the State Constitution does not require that a judicial determination precede demolition of property subsequently found to be a nuisance so as to make the city absolutely liable without regard to a subsequent judicial determination that the property was in fact a nuisance. We overrule Points of Error Nos. 2, 3, 4 and 5.

■ Points of Error Nos. 1, 6 and 15 urge that the City Charter did not grant the City the authority to enact the Unsafe Buildings Ordinance. The Charter gives the Council power "to establish all necessary rules and regulations protecting the health" of the residents of the City, and also "to define all nuisances and prohibit the same within the City." This is a broad grant of authority, clearly adequate to permit the enactment of an ordinance for destruction of buildings that are a "fire hazard," or are "dangerous to human life." These points of error are overruled.

■ Points of Error Nos. 8 and 9 attack the constitutionality of the procedure by which Mrs. Jones' property was destroyed and the Ordinance which declared it to be a nuisance. She asserts the Ordinance as applied is confiscatory, unreasonable, arbitrary and discriminatory. In this case, the burden of proof was on the City to prove, after destruction of the property, that the residence was in fact a nuisance, and that defects could not have been corrected without repairs which amounted to substantial reconstruction. Thus, there was a judicial determination of the ultimate issues as required by the holdings in *City of Texarkana v. Reagan,* supra, and *City of Houston v. Lurie,* supra, and only upon that basis were damages denied to the Appellant. Thus, she may not now complain of a confiscatory

and arbitrary taking of her property. She fully litigated the ultimate issues and lost. Points of Error Nos. 8 and 9 are overruled.

We next consider Appellant's four points of error attacking the legal sufficiency of the evidence to support the jury findings that her home was a nuisance and that it could not have been repaired without substantially reconstructing the building. In considering these "no evidence" points, we consider only the evidence and inferences tending to support the jury findings and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965).

As previously stated, the evidence established that the doors on the residence were open, the windows were out, the ceiling was falling down, and the floor had holes in it. The building had been gutted and vandalized. The only evidence on repairs was that it would cost more to repair than it was worth. In addition to the testimony describing the condition of the residence, the jury saw pictures of the actual condition. We hold that there was evidence to support the jury's answers to Special Issues Nos. 1 and 2, and we overrule Points of Error Nos. 18, 19, 21 and 22.

Point of Error No. 23 is the only factual sufficiency point of the Appellant, and it is directed to the amount of damages necessary to compensate the Appellant for her mental pain and mental anguish caused by the removal of the buildings. The jury answered the issue "none." In passing upon this point, we consider the entire record. Although Mrs. Jones did testify as to her physical condition and that she was under a doctor's care, there was no medical testimony to establish any causation between her condition and the removal of the buildings. In addition, since she was a party and the only person to testify concerning these damages, the jury had a right to pass upon her credibility and they were not required to accept her testimony. *Cheatham v. Riddle,* 12 Tex. 112 (1854); *Texas Employers' Insurance Association v. Curry,* 290 S.W.2d 767 (Tex.Civ.App.—El Paso 1956,

writ ref'd n. r. e.). We are unwilling to say that the jury's answer is against the great weight and preponderance of the evidence, and Point of Error No. 23 is overruled.

We next consider the contention that the Court erred in defining "nuisance." This contention cannot be sustained for several reasons. First, the record contains no objections to the Court's Charge, and thus any error in the definition has not been preserved for appeal. Tex.R.Civ.P. 274. But, in any event, we conclude that the definition was substantially correct and in accordance with the holdings in *Brewster v. City of Forney,* 223 S.W. 175 (Tex.Comm. App.1920), and *Parker v. City of Fort Worth,* 281 S.W.2d 721 (Tex.Civ.App.—Fort Worth 1955, no writ). Point of Error No. 17 is overruled.

Points of Error Nos. 11, 12 and 13 all complain about rulings of the trial Court concerning the admissibility of evidence. We find no reversible error on any of these rulings, and the points are overruled.

The judgment of the trial Court is affirmed.