The CITY OF WACO et al, Appellants,

v.

Louis R. RODDEY, Individually and as heir to the Estate of H. L. Roddey, Deceased, and Vallie R. Roddey, Deceased, Appellee.

No. 6247.

Court of Civil Appeals of Texas, Waco.

March 5, 1981.

Rehearing Denied April 2, 1981.

 

Earl Bracken, Jr., City Atty., Albert R. Kuehl, First Asst. City Atty., Annette Jones, Asst. City Atty., Waco, for appellants.

Ben Selman, Waco, for appellee.

**OPINION**

JAMES, Justice.

This was a suit for damages to a house resulting from an order of the Building Standards Commission of the City of Waco that said house and other structures located on Plaintiff-Appellee's property be demolished. Trial was held before the court without a jury and judgment was rendered for Plaintiff-Appellee Louis R. Roddey, Individually and as Heir to the Estate of H. L. Roddey, Deceased, and Vallie R. Roddey, Deceased, in the sum of $15,000.00. Defendant-Appellants, The City of Waco, The City of Waco Building Standards Commission, and David Smith, City Manager of the City of Waco, a Municipal Corporation, appealed. For purposes of this appeal Defendant-Appellants will be referred to as "the City".

During the summer of 1976 an inspector for the City of Waco noticed brush, debris and tall grass surrounding the buildings located at 509 North 16th Street in Waco, Texas. From that date until April 1978, inspections of the property were made. The house had been vacant since September, 1976, but the tax records of the state, county, school district and city all showed the property to be owned by H. L. Roddey, residing at 509 North 16th Street, Waco, Texas. Since no one was living on the property, the City claims that an attempt was made to find the address of an owner so that he could be notified that the structures on the property were considered to be substandard. It is also claimed that in order to do this a hold was placed on the water service by the city inspector, and neighbors were contacted. Mr. Charles Mitsakos, the Dangerous Structure Coordinator of the City of Waco, testified that he checked the City of Waco telephone directory, the Waco "Kriss-Kross" and the City Directory without any success in determining who the owner might be. A title letter was requested and received showing that the McLennan County Deed Records indicated H. L. Roddey and wife Vallie Roddey,

as record owners. The letter further showed that H. L. Roddey died intestate and Vallie Roddey was deceased. The names of the heirs of H. L. Roddey and Vallie Roddey were shown on the title letter as being Louis R. Roddey, Lawrence D. Roddey, Barbara Roddey Hogan and husband Eddie W. Hogan. The record before us shows that the other Roddey heirs have conveyed their interests in the subject property to Louis R. Roddey, Plaintiff-Appellee herein. No address for any of the heirs appeared on the title letter; however, a probate number of the Estate of Vallie Roddey, Deceased, was included on the title letter, which probate proceedings showed the address of Plaintiff-Appellee Louis R. Roddey. A notice was published in a local newspaper March 28th, 31st and April 3, 1978, notifying the heirs to contact the City of Waco's minimum housing office no later than May 3, 1978. The notice was for the purpose of advising them that a determination had been made that the structures on the property did not meet the City of Waco Minimum Housing Code. On April 18th, 21st and 25th, 1978, a notice was published in the same newspaper advising the Roddey heirs that the Building Standards Commission for the City of Waco would meet on May 3, 1978, to consider what disposition should be made of the structures located at 509 North 16th Street, Waco, Texas. It is undisputed that none of the Roddey heirs ever had any actual knowledge of the fact that this meeting would be held until after the City had partially demolished the property.

On May, 3, 1978, the Building Standards Commission for the City of Waco met, and Mr. Mitsakos presented the building at 509 North 16th Street. Pursuant to the meeting, on May 30, 1978, a demolition permit was issued, and demolition began on the main structure on the property on June 22, 1978. A portion of the roof was removed, and numerous windows and doors and other items were removed.

Plaintiff was notified by certified mail on August 19, 1978, of a second meeting of the Building Standards Commission to be held on September 6, 1978. On September 1,

however, instead of appearing before the Commission, Roddey filed suit in the District Court. Trial was held and judgment rendered for Plaintiff, for $15,000.00, from which judgment the City appeals.

The trial court filed the following findings of fact which may be summarized as follows:

1) That the City had in its possession or subject to its possession and should have known the whereabouts of the Executor of the Estate of Vallie R. Roddey, Deceased, and of Louis R. Roddey, as an Heir to the Estate of H. L. Roddey, Deceased.

2) That neither Louis R. Roddey, nor any other person with interest in the property located at 509 North 16th Street, Waco, Texas, was given proper notice by the City of proposed actions or proceedings with regard to said property.

3) That the actions, proceedings, and any attempted notice by the City to the Plaintiff, Louis R. Roddey, Individually and as Heir to the Estate of H. L. Roddey, Deceased, and Vallie R. Roddey, Deceased, did not constitute due process.

4) That damage in the amount of $15,000.00 was done to Plaintiff's property at 509 North 16th Street, Waco, Texas, by the trespass of the City.

5) That the property located at 509 North 16th Street, Waco, Texas, was not in demolition condition at the time that the City attempted and completed substantial demolition of that property.

Appellant City is before this court on four Points of Error, to wit:

1) The Trial Court erred in accepting jurisdiction of Plaintiff's case for the reason that primary jurisdiction was in the Building Standards Commission for the City of Waco.

2) The Trial Court erred in finding that the actions, proceedings and any attempted notice by the City to the Plaintiff did not constitute due process for the stated reason that the evidence shows that proper notice was given to Plaintiff in accordance with the law and the ordinances of the City of Waco.

3) The Trial Court erred in not finding that the structures located on the Roddey property constituted a nuisance in fact for the stated reason that competent and uncontroverted evidence showed that such structures for a period of time in excess of one year were substandard, vacant, unsecured and used as shelter by transients.

4) The Trial Court erred in granting Plaintiff damages of $15,000.00 for the reason that there is insufficient evidence to support such damages.

We overrule all of the Appellant City's points and contentions and affirm the trial court's judgment.

■ We revert to the Appellant City's first point, to wit, that the trial court erred in accepting jurisdiction of Plaintiff-Appellee Roddey's case for the stated reason that primary jurisdiction was in the Building Standards Commission for the City of Waco. We are of the opinion that the doctrine of primary jurisdiction has no application to the case at bar and therefore overrule this point of error.

In *Gregg v. Delhi-Taylor Oil Corp.* (1961), 162 Tex. 26, 344 S.W.2d 411, our Supreme Court delineates the doctrine of primary jurisdiction in this language:

"That theory is that when the Legislature has delegated the power to an administrative body to regulate a particular industry or business, the courts may not or will not interfere until the board or bureau has had an opportunity to pass upon the matter and has remedied, or attempted to remedy, the situation. Two of the main arguments supporting this theory are: (1) That the commission, board, or bureau is staffed with experts trained in the handling of the complex problems presented, and (2) great benefit is to be derived from a uniform interpretation of laws, rules and regulations by an administrative body whereas different results might be reached under similar fact situations by various courts or juries. It is their (Gregg's) position that 'primary jurisdiction' is a principle which determines whether the court or the administrative body should make the *initial* decision. And

this is a case, they say, in which the *initial* decision should be [must be] made *first* by the Commission." (emphasis supplied). Also see *Kavanaugh v. Underwriters Life Ins. Co.* (Tex.Civ.App. Waco CA 1950) 231 S.W.2d 753, writ refused, wherein the court said at page 756: "Questions of primary jurisdiction arise only when the statutory arrangements are such that administrative and judicial jurisdiction are concurrent for the *initial* decisions of some questions." (emphasis supplied).

In the case at bar, the trial court did not take jurisdiction in order to make the *initial* decision. The City ordinance established the Building Standards Commission as the Administrative body to hear appeals from property owners. This Commission met on May 3, 1978, and after hearing the testimony of Mr. Charles Mitsakos, the City's Dangerous Structures Coordinator, determined that the Roddey property was in violation of the City's Minimum Housing Code and ordered said property to be demolished. The City's ordinances do not provide for any further administrative procedures or remedies to be pursued after the Building Standards Commission has acted. At this point Plaintiff-Appellee Roddey had no other recourse but to bring his suit in the District Court. In other words, the Building Standards Commission had already exercised "primary jurisdiction" in the matter, and had concluded the action that it saw fit to make, pursuant to which action the City had already partially demolished the property in question before Roddey filed his suit for damages in the District Court. We overrule Appellants' first point of error.

Appellant City asserts by its second point of error: "The trial court erred in finding that the actions, proceedings and any attempted notice by the City to Plaintiff-Appellee Roddey did not constitute due process for the (stated) reason that the evidence showed that proper notice was given to Plaintiff Roddey in accordance with the law and the ordinances of the City of Waco." We overrule this point of error.

Article 1175, Section 36, Vernon's Texas Civil Statutes, empowers home rule cities to

adopt an ordinance which requires the demolition or repair of buildings which are dilapidated, substandard or unfit for human habitation and which constitute a hazard to the health, safety, and welfare of its citizens. This statute further provides: "The ordinance must provide for *proper notice* to the owner and a public hearing." (emphasis supplied).

In 1974 the City of Waco adopted an ordinance pursuant to the above statute, Section 43–8 of which provides for notice to concerned property owners as follows:

"Service of notice to comply with any decision of the building inspector or building standards commission shall be as follows:

"(a) By personal delivery to the owner.

"(b) Via registered or certified mail to the owner, occupant, or mortgagee and all other persons having an interest in the building or property as shown by the Deed Records of McLennan County, Texas.

"(c) By publishing such notice in a newspaper of general circulation not less than three (3) times within a fifteen-day period. This form of notice shall be used only when notice as provided in (a) and (b) above is unobtainable."

As we understand the City's contention, it says in effect: (1.) the City did not have the addresses of the Roddey heirs; (2.) the addresses of the Roddey heirs could not be ascertained from the Deed Records of McLennan County; therefore (3.) the City was authorized to give notice to the Roddey heirs by publication in the newspaper.

Thereupon, the City caused the following publications to be made to the Roddey heirs in the *Waco Citizen*, to wit:

(1.) On March 28, 31, and April 3, 1978, notifying the Roddeys that the City's building inspector had made a determination that the structures on the Roddey property did not comply with the Minimum Housing Code, and telling the Roddeys to contact the City's Minimum housing office not later than May 3, 1978.

(2.) On April 18, 21, and 25, 1978, advising the Roddeys that the Building Standards Commission would meet on May 3, 1978, to consider what disposition should be made of the structures on the property in question.

(3.) On May 9, 12, and 16, 1978, advising the Roddey heirs that the Building Standards Commission had ordered the immediate demolition of all structures located on the property in question.

The record before us shows that at all times material to this controversy, Louis R. Roddey's address was 1133 Pecan St., Clute, Texas, near Houston, Texas; that Lawrence D. Roddey was deceased; that Mrs. Barbara Roddey Hogan and husband Eddie W. Hogan lived at 1809 Santa Clara Street, Austin, Texas. That is to say, none of the Roddey heirs lived in or near Waco, Texas, or McLennan County.

On May 3, 1978, the Building Standards Commission ordered the Roddey structures demolished. On June 22, 1978, a wrecking firm acting pursuant to a contract with the City removed part of the roof as well as the doors and windows of the large residence house, plus fireplace mantles and other parts of the house. Mrs. Van Hook, a next door neighbor to the Roddey property, called Mrs. Hogan by telephone and told her what was taking place on their property. It is undisputed that this is the first time any of the Roddey heirs had any actual knowledge of any of the City's actions and publications concerning the property. Louis Roddey immediately appeared at the property and ordered the wrecking people off the property.

Thereafter, on August 17, 1978, the City for the first time by certified letter to Louis Roddey advised him that the Building Standards Commission would hold a second meeting on September 6, 1978, to consider "(his) failure to comply with the order to demolish or to repair" the structures in question. In addition, the City published one more notice to the Roddey heirs in the *Waco Citizen* on August 18, 22, and 25, 1978, notifying them that the Building Standards Commission would meet again on September 6, 1978. The Roddey heirs did

not appear at this meeting. Louis R. Roddey filed this suit in a district court of McLennan County on September 1, 1978.

In short, the City asserts that the Roddeys were afforded due process because the City fully complied with the notice provisions of their ordinance as hereinabove quoted; that since the Roddey heirs' addresses could not be found in the Deed Records of McLennan County, that notice by newspaper publication was all the owners were entitled to. We do not agree.

The following facts show that the City not only had information in its hands which would have easily led to the addresses of the Roddeys, but actually had such information in the City's own files, to wit:

(1.) The City Water Department had in its possession at all times material to this lawsuit, under the 509 North 16th Street card index file, the Austin, Texas, address of Eddie W. Hogan, and the address and telephone number of Louis R. Roddey at Clute, Texas. Said card also contained a notation to the effect that "Mr. Roddey" was in the office on 2–21–75 and said to mail the water bill to the service address and to call him collect if there were any questions. These are public records.

(2.) City Inspector Parker testified that on one of his inspections to the Roddey property, he talked to a "colored man" next door who told him that his (the "colored man's") wife knew where Mr. Roddey lived; however, Mr. Parker testified that he never followed up on that lead.

(3.) On February 16, 1978, the City secured a letter from Builders Title and Abstract Co., reciting that a title check of the subject property was made, showing the record owners to be H. L. Roddey and wife Vallie Roddey, both deceased. The letter further showed that Vallie Roddey died 5–14–73, and recited Probate Cause Number 28056. Said letter also showed the heirs to be Louis R. Roddey, Lawrence D. Roddey, and Barbara Roddey Hogan et vir Eddie W. Hogan. The evidence before us shows that Probate Cause Number 28056 in McLennan County is that of the Estate of Vallie Roddey, Deceased, and that said probate proceedings show the name and address of Louis R. Roddey. These are public records.

(4.) Mrs. Van Hook, next door neighbor to the Roddey property, testified that she could have given the City Mr. and Mrs. Hogan's address and phone number, as well as Mr. Roddey's address at any time if they had simply asked her.

■ "Procedural due process" requires notice that is reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests. *Armstrong v. Manzo* (1965), 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62. Notice by publication is not enough with respect to a person whose name and address are known or very easily obtainable. *Mullane v. Central Hanover Bank and Trust Co.* (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865; *City of Houston v. Fore*, (Tex.1967) 412 S.W.2d 35; *Jones v. City of Odessa* (Tex.Civ.App. El Paso CA 1978) 574 S.W.2d 850, NRE; also see *City of Houston v. Parkinson* (Tex.Civ.App. Houston 1st CA 1967) 419 S.W.2d 900, NRE.

■ In the case at bar, we are of the opinion and hold that Plaintiff-Appellee Louis R. Roddey was entitled to notice by either personal service to him or by certified mail before the Building Standards Commission determined and ordered that the structures on his property were to be demolished. His name, address, and telephone number were known to the City, and he could have been readily notified by mail. Neither he nor any of the other Roddey heirs had any actual notice of the hearing of May 3, 1978. Under these facts we hold that the citations by publication in the *Waco Citizen* newspaper did not constitute adequate notice or due process of law, and the trial court was correct in its holding that a lack of due process existed. *City of Houston v. Fore* (Tex.1967), 412 S.W.2d 35. But the City argues that because it sent Louis R. Roddey a certified letter on August 17, 1978, notifying him of a second hearing to be held by the Building Standards Commission on September 6, 1978, that the City thereby afforded him due

process. We do not agree. On May 3, 1978, the Commission without Roddey's knowledge ordered demolition of his property. On June 22, 1978, the City partially demolished the property, and no doubt would have completed the demolition had Roddey not stopped same in time. It seems to us unreasonable under these facts to require the property owner to have to appear before the Commission for a hearing on September 6, 1978, after said Commission has already ordered demolition, after which partial destruction of the property has been accomplished by the City.

Our Supreme Court has repeatedly held that where the issue is one inherently judicial in nature, such as trespass [see *Gregg v. Delhi-Taylor Oil Corp.* (1961), 162 Tex. 26, 344 S.W.2d 411], or public nuisance, [see *Crossman v. City of Galveston* (1923), 112 Tex. 303, 247 S.W. 810; *City of Texarkana v. Reagan* (1923), 112 Tex. 317, 247 S.W. 816; *City of Houston v. Lurie* (1949), 148 Tex. 391, 224 S.W.2d 871], the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body. In the case before us it is not asserted that the Building Standards Commission has been granted exclusive jurisdiction by any statutory law.

■ By Appellant's third point of error it is contended that the trial court erred in not finding that the structures on the Roddey property constituted a nuisance in fact. The evidence is voluminous and sharply conflicting as bearing upon the issue as to whether this property constituted a nuisance in fact. The trial court had the right to resolve this issue, and did so against the City. We overrule this point of error.

■ By its fourth and final point of error the City claims that the trial court erred in granting Plaintiff-Appellee damages of $15,000.00 for the reason that there is insufficient evidence to support such damages.

Mr. Charles L. Gauer, the Tax Assessor for the City of Waco and the Waco Independent School District and a former tax appraiser, staff appraiser for the highway department, and land appraiser for the City of Waco, testified that the tax records of the City of Waco showed the appraised value of the property for 1973 to be $10,743. Such appraised value was increased steadily over the following years, being $10,743 in 1974, $11,677 in 1975 and 1976, $13,128 in 1977 and $17,579 in 1978. Mr. Gauer further testified that the property in question, therefore, having an assessed value of $17,-579 in 1978 prior to demolition by the City, actually had a reasonable cash market value of $21,000.00, the assessed value being figured at approximately 20% lower than the actual cash market value. Mr. Gauer also testified that subsequent to the demolition, in 1980, the property was assessed by the City at a valuation of $4,580, making the reasonable cash market value of the property at that time an amount of approximately $5,652.00.

Mr. Louis R. Roddey, Plaintiff-Appellee and owner of the property, testified that the property in question had a reasonable cash market value of approximately $25,-000.00 prior to the demolition, and that after the demolition the reasonable cash market value of the property was between $4,000.00 and $6,000.00.

Mrs. Van Hook, the next door neighbor to the property in question, testified that in 1978 prior to the demolition such property was comparable in value to her property which was of a value of approximately $25,-000.00.

It has generally been recognized that in a case such as this the proper measure of recovery by plaintiff for damages to realty is the difference in the market value of the realty immediately before the injury and its market value immediately after the injury. *Frymire Engineering Company, Inc. v. Grantham* (Fort Worth CA 1975) 517 S.W.2d 820, Rev'd on other grounds 524 S.W.2d 680. Also see *Crain v. West Texas Utilities Co.* (Eastland CA 1949) 218 S.W.2d 512, NRE, and *Houston Natural Gas Corporation v. Pearce* (Houston CA 1958) 311 S.W.2d 899, NRE.

In considering and weighing all the evidence before us as is required of us by *In*

*Re King's Estate* (Tex.1952), 150 Tex. 662, 244 S.W.2d 660, we conclude that the finding that Plaintiff-Appellee was entitled to $15,000.00 damages was well within the range of the evidence and was therefore not so against the great weight and preponderance of the evidence as to be clearly wrong or unjust. We accordingly overrule Appellants' Point of Error Number 4.

Judgment of the trial court is affirmed.

AFFIRMED.

HALL, Justice, concurring.

I concur in the affirmance of the judgment, but I would overrule appellants' first and second points of error, and thereby hold the trial court properly assumed jurisdiction in the case, for the reasons that follow:

Appellants' "primary jurisdiction" complaint is based upon the fact that this suit was filed on September 1, 1978, prior to the scheduled meeting of the Building Standards Commission on September 6, 1978, of which appellee Roddey had notice prior to filing suit.

It is undisputed that appellants' demolition of appellee's property began on June 22, 1978, pursuant to the decision made by the Commission at the conclusion of its first hearing on May 3, 1978. If, as appellants assert under their second point of error, the notice by publication given to appellee of the Commission's first meeting satisfied constitutional due process, then all administrative action had been exhausted on May 3, 1978, and the matter was then ripe for judicial review. If, as appellants assert under their first point of error, the matter was still before the Commission for its final determination when appellee filed this suit on September 1, 1978, then appellants' entry upon and damage to appellee's property on June 22, 1978, were without legal justification and constituted a trespass; and appellee had the immediate right thereafter to bring this suit for his damages without awaiting further action by the Commission.

In summary, the Commission's ruling on May 3, 1978, was either valid and final or it was not. Under the record, the trial court

properly assumed jurisdiction on either theory. A decision on appellants' second point of error is therefore unnecessary and immaterial to the validity of the judgment. *Gulf Land Co. v. Atlantic Refining Co.*, 134 Tex. 59, 131 S.W.2d 73, 84 (1939).