CLINTON, Judge,
dissenting.
The majority deems controlling in this cause the opinion of the Court on State’s motion for rehearing in Fann v. State, 702 S.W.2d 602 (Tex.Cr.App.1986). My disagreement with the formulation in Fann lies in its utter disregard for basic principles of trial by jury and of due process and due course of law. See my concurring opinion in Polk v. State, 693 S.W.2d 391, 396 (Tex.Cr.App.1985); see also Flores v. State, 690 S.W.2d 281, 286, n. 3 (Tex.Cr.App.1985). But since I did not participate in the decision of the Court after original submission nor for that reason in its decision on rehearing, I refrained from writing on the problem foreseen in Polk and clearly presented in Fann. Now it reappears in this cause.
The majority would have this Court hold that, having heard evidence presented to a jury on the merits of allegations in a charging instrument and then having heard evidence as the trier of fact on the issue of punishment, a trial court “has the authority to make an affirmative finding as to the use or exhibition of a deadly weapon [and to] enter it in the judgment.” The trouble in that flows from the undisputed fact that *329 there is no pleading alleging the accused “used or exhibited a deadly weapon” as defined in V.T.C.A. Penal Code, § 1.07(a)(ll), and thus no notice to him that the issue is in the case.
The notion advanced in Fann that the trial court was simply “respond[ing] to the special issue concerning the use or exhibition of a deadly weapon” is utterly specious. In his dissenting opinion Judge Teague demonstrates beyond any doubt neither indictment alleging aggravated sexual abuse nor charge to the jury mention a deadly weapon, and in assessing punishment neither did the trial judge. The so-called “special issue” remained a phantom throughout — from indictment to judgment, and will haunt Fann and all others similai'Iy situated.
Likewise, in this cause though the indictment alleges applicant attempted capital murder “by intentionally shooting a gun ...,” even Polk makes clear that such does not allege "a deadly weapon,” viz: “The indictment did not mention use or exhibition of a deadly weapon, nor is a knife a deadly weapon per se.” Polk, supra, at 395. Neither is a “gun.” Therefore, there was no notice in the constitutional sense that to be litigated was an issue of whether the “gun” mentioned in the indictment is a “deadly weapon” within the meaning of V.T.C.A. Penal Code, § 1.07(a)(ll).
The majority in Polk said that “the corpus of what we are dealing with is eligibility of parole, not what the penalty range or sentence will be,” and suggested that “notice” requirements of due process and due course of law “must be examined in that light,” id., at 396, n. 4. [emphasis in Polk.]. In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court explained underpinnings of due process claims, viz:
“ ‘[Tjhis court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a “right” or as a “privilege.” ’ [All citations are omitted throughout]. Whether any procedural protections are due depends on the extent to which an individual will be ‘condemned to suffer grievous loss.’ The question is not merely the ‘weight’ of the individual’s interest, but whether the nature of the interest is one within the contemplation of the ‘liberty and property’ language of the Fourteenth Amendment.”
Id., 408 U.S. at 481, 92 S.Ct. at 2600, 33 L.Ed.2d at 494. Although the Supreme Court then examined the nature of the interest of a parolee in his continued liberty, the interest in becoming eligible for and achieving parole at the earliest moment is similar in nature. As to the former the Supreme Court concluded:
“It is hardly useful any longer to try to deal with this problem in terms of whether the parolee’s liberty is a ‘right’ or a ‘privilege.’ By whatever name, the liberty is valuable and must be seen as within the protection of the Fourteenth Amendment.”
Id., 408 U.S. at 482, 92 S.Ct. at 2601, 33 L.Ed.2d 495.
To enter an affirmative finding in a judgment that defendant used or exhibited a deadly weapon and thereby extend time to be served, without consideration of good conduct time, “condemn[s] [him] to suffer grievous loss” of liberty to the extent that the most rudimentary of all due process requirements — advance written notice of the very issue on which that finding is made — is a procedural protection due him. See Caddell v. State, 605 S.W.2d 275, 277 (Tex.Cr.App.1980).
In both the Fifth and Fourteenth Amendments and in Article I, § 19, “liberty” and “property” stand side by side on equal footing. Each is equally protected by the Legislature in Article 1.04, V.A.C.C.P. In determining what process or course of law is due, “ ‘there can be no doubt that at a minimum [the cryptic and abstract words] require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.’ [citations omitted throughout]. Questions frequently arise as to the adequacy of a particular *330 form of notice in a particular case. But as to the basic requirement of notice itself there can be no doubt ...” Armstrong v. Manzo, 380 U.S. 545, 550, 85 S.Ct. 1187, 1190-1191, 14 L.Ed.2d 62 (1965).
Neither “liberty” nor “property” is denigrated by our law, and in making that determination one must not be exalted over the other. Here, however, as in Fann, the opinion of the majority in this cause denies a constitutional guarantee against deprivation of liberty which would be routinely granted against deprivation of property when proper notice has not been given.[1]
The rationale of the majority may be applied where a trial court finds one or more prior convictions and assesses enhanced punishment accordingly — albeit without any allegations of such convictions in a charging instrument. Will that obvious violation of due process then be sanctioned?
Fearing this majority may do so tomorrow, I dissent to establishing a precedent - for it today.
TEAGUE, J„ joins.

. In Cunningham v. Parkdale Bank, 660 S.W.2d 810 (Tex.1983), a probate court entered a money judgment in favor of Parkdale Bank, as successor administrator of an estate, against original administrator, one Maston, “despite the fact that Parkdale Bank filed no pleadings praying for such a judgment ... and no citation was issued to him personally.” The Supreme Court agreed with the conclusion of the dissenting justice in the court of appeals, viz:
"[T]he probate court exceeded its jurisdiction in summarily rendering a personal judgment because of the absence of pleadings, notice, opportunity for hearing and other procedural irregularities."
Id., at 812. As to a requirement of notice in the Probate Code, the Supreme Court pointed out:
"This undoubtedly is based upon the postulate that procedural due process ‘requires notice that is reasonably calculated to inform parties of proceedings which may directly and adversely affect their legally protected interests.’ City of Waco v. Roddey, 613 S.W.2d 360, 365 (Tex.Civ.App.—Waco 1981, writ dism’d).”
Id., at 813. The "legally protected interest" in City of Waco v. Roddey, supra, was in a vacant house surrounded by brush, debris and tall grass, partially demolished by the City of Waco without affording Roddey that proper notice procedural due process requires. Id., at 365-366.