LJD PROPERTIES, INC., et al., Appellants, Cross–Appellees,

v.

The CITY OF GREENVILLE, et al., Appellees, Cross–Appellants.

No. 05–87–01135–CV.

Court of Appeals of Texas, Dallas.

May 24, 1988.

Rehearing Denied July 6, 1988.

Mick McKamie, Angleton, for appellants, cross-appellees.

H.C. McCracken, Carrollton, for appellees, cross-appellants.

Before STEPHENS, MCCLUNG and BAKER, JJ.

McCLUNG, Justice.

LJD Properties, Inc. (LJD) and Larry Diggs appeal a judgment of the District Court which enforces the decision of the Greenville Substandard Structures Rehabilitation Board (Board) ordering demolition of structures located on two properties owned by LJD and Diggs. The City of Greenville (City) and the Board cross-appeal from the portion of the District Court's judgment which denies enforcement of the Board's decision to demolish structures located on a third property owned by LJD and Diggs. Each party complains of the sufficiency of the evidence to support the judgment. Because we find no merit in the contentions of the parties, we affirm.

This appeal concerns three properties owned by LJD and Diggs in the City of Greenville: a King Street property, a Pickett Street property, and a Bourland Street property. After providing LJD and Diggs with notice of the defects in the properties and an opportunity to correct the defects, the Board held a hearing and ordered demolition of structures on all three properties pursuant to the provisions of the Greenville City Code (Code). The Code provides, in pertinent part, that the Board has the power and duty to "require the demolition of a structure found to be substandard." The code also provides that "the following stan-

dards may be followed in substance by the board in ordering repair, vacation or demolition:"

(1) If the substandard building or structure can reasonably be repaired so that it will no longer be in a condition which is in violation of the terms of this article, it shall be ordered repaired.

(2) If the substandard building or structure is in such condition as to make it dangerous to the health, morals, safety or general welfare of its occupants or of the public, it shall be ordered to be vacated.

(3) In any case where a substandard building or structure is fifty (50) per cent damaged or decayed, it shall be demolished, and in all cases where a building cannot be repaired so that its existence will no longer be in violation of the terms of this article it shall be demolished.

LJD and Diggs appealed the decision of the Board to the District Court. The Court upheld the decision of the Board, but allowed LJD and Diggs 90 days, following the first hearing, to bring the properties into proper condition. The Court held a second hearing, after expiration of the 90 day period, to determine whether LJD and Diggs had brought the properties up to the standards required by the City Code.

Each party presented evidence at the hearing concerning the present condition of the properties and the trial judge personally inspected the three premises. LJD and Diggs presented a number of witnesses who testified, in part, that the properties had been cleaned up, were more than 50% structurally sound, were not breeding places for rodents or insects, did not contain standing water, rubbish, junk, waste or trash, and did not contain rotten, smoke damaged or fire damaged boards or beams. The City and the Board presented evidence, to the contrary, that the properties were breeding places for rodents and insects, were not secured properly, were not wired properly, contained inadequate plumbing and open sewers, were not structurally sound, and would not be economically feasible to repair. Two witnesses testified that the properties did not comply with City

Building and Fire Codes. The judge, after hearing the evidence and inspecting the properties, held that the King and Pickett Street properties met the Code requirements for demolition, but that the Bourland Street property could not be demolished under the terms of the Code. LJD and Diggs appealed the Court's decision regarding the King and Pickett properties and Greenville and the Board cross-appealed the Court's decision concerning the Bourland Street property. We first will deal with the appeal of LJD and Diggs.

■ LJD and Diggs first complain that the Board's orders of demolition were not authorized by Code § 6–181(d)(1)–(3), set out above. They contend that the Board did not find that the buildings were 50% or more damaged or decayed, nor that the buildings could be repaired; rather the Board found the buildings were a hazard to the health, safety and welfare. Accordingly, they argue, the only board action authorized by the code was an order to vacate the premises.

We hold that, under subsection three, the board is authorized to order buildings demolished even absent a finding of 50% damage if a building cannot be repaired so that its existence will no longer be in violation of the terms of the ordinance. LJD and Diggs do not question the sufficiency of the evidence to support a finding that the buildings cannot be repaired so that they will not violate the code. Accordingly, we overrule LJD and Diggs' first point of error.

■ LJD and Diggs also complain that the trial court's judgment is improper because the court failed to find that the structures in question were "nuisances" as required by a line of cases including *Crossman v. City of Galveston*, 112 Tex. 303, 247 S.W. 810 (1923), *City of Houston v. Lurie*, 148 Tex. 391, 224 S.W.2d 871 (1949) and *City of Texarkana v. Reagan*, 112 Tex. 317, 247 S.W. 816 (1923). Admittedly, *Crossman*, and like cases, state that "a citizen's property not a nuisance within itself or under the common law, cannot be destroyed without the judgment of a court finding that it is a nuisance." *Crossman,*

247 S.W. at 813. Nevertheless, we believe LJD and Diggs misinterpret the holdings of these cases. Nuisances are commonly classified as public, private, or both, and arise from unreasonable, unwarranted or unlawful use by a person of his own property. A public nuisance is maintained by "act, or by failure to perform a legal duty, intentionally causing or permitting a condition to exist which injures or endangers the public health, safety or welfare." BLACK'S LAW DICTIONARY 961 (5th ed. 1979). Although it is fundamental that the government cannot destroy the property of private citizens at will and without justification, the government is given, through its police powers, the ability to abate public nuisances. The police power is a grant of authority from the people to their governmental agents for the protection of the health, the safety, the comfort and the welfare of the public. It is a necessary and salutary power, since without it, society would be at the mercy of individual interest and there would exist neither public order nor security. *Spann v. City of Dallas,* 111 Tex. 350, 235 S.W. 513, 515 (1921). Since the right of the citizen to use his property as he chooses, so long as he harms nobody, is an inherent and constitutional right, the police power cannot be invoked for abridgment of a particular use of private property, unless such use reasonably endangers or threatens the public health, the public safety, the public comfort or welfare. *Id.* We believe this is the message to be gleaned from *Crossman* and its progeny.

But, it is also clear that where a building creates a hazard to health, safety, comfort or welfare, a nuisance exists, as a matter of law, which can be abated by the government. *See Hart v. City of Dallas,* 565 S.W.2d 373, 379 (Tex.Civ.App.—Tyler 1978, no writ)(dicta). The trial court judgment reflects that the court found structures on two properties owned by LJD and Diggs to be hazardous to the health, safety and welfare of the citizens of Greenville. The trial court found, therefore, that the structures were public nuisances. The trial court is not required to use the magic word "nuisance" in order to render a proper judgment in a case such as this. Accordingly,

we overrule LJD and Diggs' fourth point of error.

■ LJD and Diggs next maintain that the trial court erred in applying the substantial evidence rule to this case. They base this claim on the fact that the District Court, in its order, states, in part, that "The order of the Greenville Substandard Structures Rehabilitation Board ... was supported by substantial evidence." It is well established that the substantial evidence rule does not apply when a court reviews the decision of a city to demolish buildings under authority of a city ordinance. *City of Houston v. Lurie,* 148 Tex. 391, 224 S.W.2d 871, 874–75 (1949). However, the findings of fact and conclusions of law contained in this record have not been signed by the judge. As a result we cannot ascertain, positively, what standard was applied by the judge in deciding this case. Assuming, but not deciding, that the judge erroneously applied the substantial evidence rule, we hold that any error in doing so is harmless if the record contains sufficient evidence to support a finding of hazard by a preponderance of the evidence. Accordingly, we turn to LJD and Diggs' second and third points of error concerning the sufficiency of the evidence.

■ LJD and Diggs assert the evidence is legally and factually insufficient to support the trial court's finding of hazard to the health, safety, and welfare of the citizens of Greenville.

As stated above no findings of fact or conclusions of law were signed by the trial court; therefore, it will be implied that the trial court made all necessary findings to support its judgment. *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). Nevertheless, implied findings may be challenged by legal and factual sufficiency points. The Court of Appeals, in reviewing a legal insufficiency point, is to consider only the evidence most favorable to the implied factual findings and is to disregard all opposing or contradictory evidence. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W. 2d 609, 613 (1950). The Court of Appeals, in reviewing a factual insufficiency point,

must consider and weigh all the evidence including the evidence contrary to the trial court's judgment. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex.1980). After reviewing the entire record we hold that the trial court's judgment, declaring the King and Pickett Street properties a hazard to the health, safety and welfare of the citizens of Greenville, is supported by legally and factually sufficient evidence. Accordingly, we overrule LJD and Diggs' second, third, and fourth points of error.

We next turn to the assertions by the City and the Board in their cross-appeal. In points one and two the city and the Board complain that the trial court erred (1) in failing to grant injunctive relief against Diggs and LJD and (2) in failing to assess civil penalties against Diggs and LJD. The City and the Board non-suited these claims at trial and acknowledged in oral arguement they had abandoned these allegations by such action. We overrule these first two points of error.

In their third and fourth points of error, the City and the Board complain that the evidence is legally and factually insufficient to support a judgment for LJD and Diggs as to the Bourland Street property. Again, we must follow the standards of review set out in *Burnett* and *Renfro.* After reviewing the entire record, we hold that there is legally and factually sufficient evidence to support the court's judgment that the Bourland Street property was not a hazard to the health, safety, and welfare of the citizens of Greenville. Accordingly we overrule the City and the Boards final two points of error.

The judgment of the trial court is affirmed.