**Affirmed and Memorandum Opinion filed February 5, 2013.**



In The

# 𝕱𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 𝕮𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### NO. 14-11-00979-CV

**GEORGE WOOD, Appellant**

**V.**

**THE CITY OF TEXAS CITY, Appellee**

**On Appeal from the 10th District Court
Galveston County, Texas
Trial Court Cause No. 09-CV-1977**

## M E M O R A N D U M   O P I N I O N

Appellant, George Wood, appeals from the trial court's final judgment (1) finding that two residential properties he owned are public nuisances; and (2) authorizing appellee, the City of Texas City, Texas ("Texas City"), to demolish and remove the structures located on those properties pursuant to section 54.018 of

the Texas Local Government Code.[1]  Finding no error, we affirm.

## BACKGROUND

Wood moved to Galveston County in the 1970s, and he began investing in real estate soon after his arrival.  By the 1990s, Wood owned properties throughout Galveston County and was buying, selling, and operating rental properties as his full-time occupation.  At the time this dispute went to trial, Wood owned approximately 180 properties in Galveston County and at least 50 properties in Texas City alone.  In 2003, Wood was diagnosed with multiple sclerosis.  In 2008, he was involved in an automobile accident and suffered serious injuries.  In addition, in September of 2008, Hurricane Ike struck Galveston County and damaged many of Wood's properties.  The combination of these events made it very difficult for Wood to properly manage and maintain his many properties.

Wood purchased most of his real estate at foreclosure sales.  According to Wood, he sought out "opportunistic purchases" and he frequently bought properties sight unseen.  That was the case with the two properties at issue here, both purchased at foreclosure sales in 2003.  The first property is a duplex located at 1201-1203 4th Avenue North (the "4th Avenue Property").  The second property is located at 1236 1st Avenue North (the "1st Avenue Property").  Only a few blocks apart, the two properties are located in the Chelsea Manor subdivision.  Among the problems facing the neighborhood are gang activity, illegal drug deals, vandalism, and burglaries.  According to Wood, the two properties at issue here were already in poor condition when he purchased them and their condition worsened as a result of continued vandalism, theft, and Wood's own decisions

---

[1] Texas City also sought to have a third property owned by Wood, a commercial building, declared a public nuisance.  The trial court found in favor of Wood on that property, however, and Texas City has not appealed that determination.

2

regarding which of his properties should be repaired first.

Following Hurricane Ike, Wood was faced with the task of repairing storm-induced damage on many of his properties throughout Galveston County. Wood prioritized those repairs based on two factors: (1) the amount of damage;[2] and (2) the chance the property would produce income once the repairs were completed. According to Wood, the two Chelsea Manor properties were at the bottom of his repair list because they were unlikely to produce income if they were repaired due to the well-known problems facing the neighborhood. In fact, Wood admitted he had no intention of making any repairs to the 1st and 4th Avenue properties unless someone expressed a desire to move into one of the properties. As a result, with the exception of occasionally boarding up the two properties,[3] Wood did nothing to them and they slid deeper and deeper into disrepair.

Due to their deteriorating condition, the two Chelsea Manor properties came to the attention of Texas City officials in 2007. Sheila Bowden, the program coordinator for the Texas City Office of Community Development and one of the Texas City employees charged with representing Texas City before the Texas City Building and Standards Commission, began working with Wood in an effort to get the 1st and 4th Avenue properties repaired. As a result of those efforts, on February 24, 2009, Wood agreed to make numerous specified repairs to the two properties. Among the promised repairs were (1) repairing both roofs, (2) replacing stolen windows and doors, (3) repairing electrical and plumbing issues, and (4) replacing stolen bathroom and kitchen fixtures. Wood ultimately made none of the promised repairs.

---

[2] According to Wood, those properties with the least damage were first in line for repairs, assuming they offered the potential of generating income once the repairs were completed.

[3] The properties had to be boarded up repeatedly because vandals frequently tore off the boards and entered the structures.

In 2009, Texas City notified Wood that it considered his 1st and 4th Avenue properties substandard buildings and in violation of various Texas City ordinances. The notices also informed Wood that Texas City considered the buildings on those properties unsafe and "attractive nuisance[s] to children, vagrants and criminals." Finally, the notices informed Wood of hearings before the Texas City Building Standards Commission where he would be allowed to present evidence related to the alleged violations.

At the conclusion of the September 22, 2009 hearing, the Building and Standards Commission found that both the 1st and 4th Avenue properties were substandard, in violation of numerous Texas City ordinances and codes, and presented a "threat to the health, safety, and general welfare to [sic] the public." The Building and Standards Commission ordered that both structures be demolished.

Wood filed an original petition in Galveston County District Court challenging the demolition orders. In addition, Wood asserted the demolition orders constituted a taking of private property without compensation in violation of the United States and Texas constitutions. Texas City filed an answer and, choosing not to enforce the Building and Standards Commission demolition orders, also filed a counterclaim seeking an order from the district court authorizing the demolition of the two properties.

The case went to trial before the bench on September 7, 2011. Wood testified as detailed above. In addition, Bowden testified about the condition of the two Chelsea Manor properties. According to Bowden, overgrown grass and bushes have surrounded the 4th Avenue property for years. Bowden further testified that the 4th Avenue structure has broken windows and graffiti on the exterior walls. According to Bowden, the building does not have electricity and

4

electrical wires dangle exposed outside the walls. The structure also has rotten wood, collapsed ceilings, and vandals have broken walls and doors. Photographs admitted into evidence confirmed Bowden's testimony regarding the condition of the 4th Avenue structure. The City also received reports of children entering this structure, which is close to a school bus stop.

Bowden also addressed the condition of the 1st Avenue structure, which she testified is similar to that of the 4th Avenue structure. She noted that both properties collect trash and attract snakes, rodents, and roaches. Bowden testified that she personally observed a male and female enter the 1st Avenue structure and when this was brought to Wood's attention, he authorized the police to arrest them. Photographs of the 1st Avenue structure were admitted into evidence as well. These revealed broken windows and an exterior wall with a gaping hole large enough for an adult to gain entry into the building. The 1st Avenue photographs also demonstrate that the structure has rotten wood, loose boards and siding, and a sizeable hole in the roof, and that the rear portion of the house sags. Interior photographs show walls that have been ripped out and loose electrical wires and light fixtures.

Dennis Harris, the Texas City Fire Marshal, also testified regarding the condition of the two Chelsea Manor properties. According to Harris, the two properties contain fast-burning dried and rotten wood, which he opined present a threat to anyone entering them as well as any firefighters who may be required to respond to an emergency situation inside those buildings. Harris testified that abandoned buildings such as the two Chelsea Manor properties represent a greater fire risk than occupied and maintained buildings. Harris also testified that when a structure has holes in the roof or is otherwise open to the elements, the structure begins to deteriorate.

5

Two letters prepared by James Gartrell, a professional engineer, were admitted into evidence during the trial. Both letters were addressed to Wood and they report the results of Gartrell's structural inspection and engineering evaluation of the two Chelsea Manor properties. With the exception of noting which property each letter addresses, the letters are identical. According to Gartrell, the structural condition of both properties is marginal and they exhibit minimal hurricane damage. Gartrell then noted the condition of each foundation was good but each structure had numerous other issues that would need to be addressed. Gartrell's recommendations included (1) the replacement of "electrical, plumbing and HVAC," "deteriorated structural members," and windows; (2) the construction of a new roof, including replacement of the roof decking; and (3) performing all exterior and structural work according to "Windstorm requirements."

At the close of the evidence, the district court announced the following from the bench: (1) the 1st and 4th Avenue properties are "attractive nuisances;" (2) the houses are vacant and all efforts to secure them have failed; (3) the vacant houses are "a magnet for children, for illegal drug activity, for gang activity;" (4) the two houses are at the bottom of Wood's income-producing potential list; (5) Wood does not have the resources, health, or fortitude to restore the two houses; (6) Wood has promised repairs and failed to follow through on those promises; (7) the condition of the two houses puts the public at risk; and (8) the two houses are public nuisances. In its final judgment, the trial court found that the 1st Avenue and 4th Avenue properties constitute public nuisances and authorized Texas City to demolish and remove both structures. The appellate record indicates that neither party requested the entry of findings of fact and conclusions of law. This appeal followed the trial court's denial of Wood's motion for new trial.

6

Wood presents four issues on appeal, which we consolidate into three.

## I.     The evidence is sufficient to support the trial court's finding that both structures are public nuisances.

In Wood's first issue, he contends the evidence is insufficient to support the trial court's finding that the 1st and 4th Avenue structures are public nuisances.  In his fourth issue, Wood argues the trial court's judgment authorizing the demolition of the two structures constitutes an unconstitutional taking.  Because a "government commits no taking when it abates what is, in fact, a public nuisance," we address these issues together.  *City of Dallas v. Stewart*, 361 S.W.3d 562, 569 (Tex. 2012).

While Wood does not specify whether his first issue challenges the legal sufficiency of the evidence, the factual sufficiency, or both, we liberally construe his first issue as challenging both the legal and factual sufficiency of the evidence.

When a bench trial is conducted and the court does not enter findings of fact and conclusions of law to support its ruling, all facts necessary to support the judgment are implied.[4]  *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662, 666 (Tex.1987).  Because the trial court granted judgment for Texas City, but did not sign findings of fact and conclusions of law, we review Wood's complaints with the presumption that all findings of fact and conclusions of law were made in favor

---

[4] While Texas City occasionally refers to the trial court's comments from the bench as "findings," we cannot substitute them for findings of fact and conclusions of law.  *See* Tex. R. Civ. P. 299a ("Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment."); *see also Huang v. Don McGill Toyota, Inc.*, 209 S.W.3d 674, 679 (Tex. App.—Houston [14th Dist.] 2006, no pet.) ("[W]e cannot consider comments made by the judge at the conclusion of a bench trial as a substitute for findings of fact and conclusions of law.").

of Texas City.  When findings of fact and conclusions of law are not requested and none are filed by the trial court, the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence.  *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

When the appellate record includes the reporter's and clerk's records, implied findings are not conclusive and may be challenged on the basis of legal and factual sufficiency.  *BMC Software Belg.*, 83 S.W.3d at 795.  We review the trial court's decision for legal sufficiency of the evidence by the same standards applied in reviewing the evidence supporting a jury's finding.  *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).  When reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.  *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.  *Id.* at 827.

When a legal sufficiency challenge concerns an issue on which the appellant does not bear the burden of proof, we review it under a "no evidence" standard:

> "No evidence" points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact.

*Foley v. Capital One Bank, N.A.*, 383 S.W.3d 644, 646–47 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (quoting *City of Keller*, 168 S.W.3d at 810).  Evidence does not exceed a scintilla if the trier of fact would have to guess whether a vital fact exists.  *Id.* at 647 (citing *City of Keller*, 168 S.W.3d at 813).  The final test for

legal sufficiency is whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under the review. *Id.* (citing *City of Keller*, 168 S.W.3d at 827). Therefore, we must examine the record in this case to determine whether some evidence exists to support the trial court's judgment.

In reviewing factual sufficiency, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *2900 Smith, Ltd. v. Constellation NewEnergy, Inc.*, 301 S.W.3d 741, 746 (Tex. App.—Houston [14th Dist.] 2009, no pet.). We may set aside the verdict for factual sufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* We may not pass upon the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would support a different result. *Id.* If we determine the evidence is factually insufficient, we must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence supporting the trial court's judgment; we need not do so when affirming the judgment. *Id.*

A public nuisance is maintained (1) by an act or by a failure to perform a legal duty (2) that intentionally causes or permits a condition to exist (3) that injures or endangers the public health, safety, or welfare. *LJD Properties, Inc. v. City of Greenville*, 753 S.W.2d 204, 207 (Tex. App.—Dallas 1988, writ denied).

> Although it is fundamental that the government cannot destroy the property of private citizens at will and without justification, the government is given, through its police powers, the ability to abate public nuisances. The police power is a grant of authority from the people to their governmental agents for the protection of the health, the safety, the comfort, and the welfare of the public. It is a necessary and salutary power, since without it, society would be at the mercy of individual interest and there would exist neither public order nor security.

*Id.* A private citizen's right to use his property as he sees fit is of constitutional

9

dimension and it cannot be abridged unless such use "reasonably endangers or threatens the public heath, the public safety, the public comfort or welfare." *Id.* When a building creates a hazard to health, safety, comfort or welfare, a nuisance exists and the government, by virtue of its police powers, can abate that nuisance. *Id.* (citing *Hart v. Dallas*, 565 S.W.2d 373, 379 (Tex. Civ. App.—Tyler 1978, no writ)). The Texas Local Government Code also authorizes a municipality, such as Texas City, to bring an action to compel the demolition of a structure found to be a public nuisance or to obtain approval to remove the structure and recover costs incurred in doing so. *See* Tex. Loc. Gov't Code Ann. § 54.018(a) (West 2008).

Having reviewed the entire record, we hold that the evidence summarized above is legally and factually sufficient to support the trial court's determination that the 1st and 4th Avenue properties were public nuisances endangering the public health, the public safety, the public comfort or welfare. For example, the court had evidence that the structures were a fire hazard, an unsecured haven for criminal activity, an attractive and unsafe environment for children, lacked adequate wiring and plumbing, attracted vermin, and had rotten wood and sizeable holes in interior and exterior walls. *See LJD Properties, Inc.*, 753 S.W.2d at 207–08 (holding evidence that the buildings at issue were not properly secured, were not structurally sound, did not have proper electrical wiring, lacked adequate plumbing, were breeding places for rodents and insects, and would not be economically feasible to repair, was legally sufficient to support the trial court's determination they were public nuisances).[5]

---

[5] Wood also argues that the statutory term "nuisance" is vaguely defined in the Local Government Code. *See* Tex. Loc. Gov't Code Ann. § 217.002 (West 2008) (providing that a municipality may define and declare what constitutes a nuisance and authorize the summary abatement of that nuisance). Texas City asserts Wood failed to preserve this argument for appellate review because he raised no "vagueness" complaint before the trial court. To preserve a complaint for appellate review, Wood must have presented to the trial court a timely request,

Because the evidence is sufficient to support the trial court's judgment declaring the 1st and 4th Avenue properties public nuisances, we hold there has been no unconstitutional taking of Wood's property. *See City of Dallas*, 361 S.W.3d at 569. We overrule Wood's first and fourth issues.

## II. The trial court did not abuse its discretion in ordering the structures demolished.

In his second issue, Wood contends the trial court abused its discretion when it ordered the 1st and 4th Avenue structures demolished. According to Wood, the demolition order was excessive because there were alternative ways short of demolition to address the public nuisance presented by the two Chelsea Manor properties. Among the alternatives proposed by Wood were: (1) the imposition of fines, (2) Texas City repairing the structures and imposing a lien on the two properties for the cost of the repairs, and (3) ordering the two properties fenced, a remedy Wood testified during trial that he was willing to perform immediately.

We review the trial court's judgment authorizing Texas City to demolish and remove the 1st and 4th Avenue structures under an abuse of discretion standard. *See Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376, 384 (Tex. App.—Fort Worth 2002, pet. denied) (applying abuse of discretion standard to appellate review of trial court's demolition and repair order under chapter 54 of the Texas Local Government Code). Under an abuse of discretion standard of review, we cannot overrule the trial court's decision unless that court acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (applying abuse of

---

objection, or motion that states his specific grounds for the relief desired. *See* Tex. R. App. P. 33.1. Even a constitutional challenge can be waived if not properly raised in the trial court. *In re Doe 2*, 19 S.W.3d 278, 284 (Tex. 2000). Because Wood raises his vagueness complaint for the first time in his appellant's brief, we agree with Texas City and conclude he has waived review of this issue.

11

discretion standard in a temporary injunction setting).

The evidence demonstrates that Wood had owned the two properties since 2003 and had made minimal efforts to maintain them in the already poor condition in which he purchased them. The evidence also demonstrates that the two structures, even if they were not in immediate danger of collapse, were in very poor condition by 2011, and were largely unsecured against unauthorized entry. The evidence was undisputed that the only effort Wood had made to actually repair the two structures was the purchase of roofing materials, which had been promptly stolen. The trial court also heard evidence that Wood had no plans to make any further efforts to repair the two structures unless and until he had someone interested in immediately purchasing or renting the properties. The trial court also heard Wood himself testify that the Chelsea Manor neighborhood had such serious problems with crime that it was unlikely anyone would express such an interest in the near future. The evidence also demonstrated that all efforts to secure the two structures against theft and vandalism had failed. In addition, the trial court heard evidence, again from Wood himself, that he (1) had serious health issues impacting his ability to manage and maintain his properties, (2) had mismanaged his properties in the past, (3) had broken promises to Texas City that he would repair the two structures, and (4) was experiencing such severe financial difficulties in the aftermath of Hurricane Ike that he did not have the financial ability to repair all of the properties that he owned and were in need of repair. Finally, the trial court heard Wood's testimony that he was ready, willing, and able to install a six-foot chain link fence around each property.

Having reviewed this evidence, we cannot conclude that the trial court abused its discretion when it decided that a method short of demolition, such as installing a chain link fence around the two properties, would not resolve the

threats to the public health, safety, and welfare posed by the 1st and 4th Avenue properties and instead authorized Texas City to demolish them. We overrule Wood's second issue.

## III.   The trial court did not abuse its discretion in denying Wood's motion for new trial alleging changed circumstances.

In his third issue, Wood contends the trial court abused its discretion when it denied his motion for new trial based on changed circumstances: the installation of six-foot chain link fences around both the 1st and 4th Avenue properties. We construe Wood's motion as a motion for new trial based on newly-discovered evidence. *See Brown v. Brown*, No. 09-06-473-CV, 2007 WL 2324303, at *5 (Tex. App.—Beaumont August 16, 2007, no pet.) (mem. op.) (treating a motion for new trial based on changed circumstances as a motion for new trial based on newly-discovered evidence). To prevail on his motion, Wood had to establish that (1) he learned of the new evidence since the trial, (2) his failure to discover the evidence sooner was not due to a lack of diligence on his part, (3) the evidence is not cumulative, and (4) the evidence is so material that it would probably produce a different result if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010).[6] This court will not disturb the trial court's ruling on a motion for new trial absent an abuse of discretion. *Id.*

We conclude Wood failed to meet his burden because the evidence he

---

[6] In support of his contention that the trial court abused its discretion when it denied his motion for new trial based on changed circumstances, Wood cites *Chase Manhattan Bank v. Bowles*, 52 S.W.3d 871 (Tex. App.—Waco 2001, no pet.). Because that case addressed not a motion for new trial but a motion to dissolve an injunction based on the contention that changed circumstances had altered the status quo the injunctive relief sought to maintain, we conclude *Chase Manhattan Bank* is inapposite here. *See Chase Manhattan Bank*, 52 S.W.3d at 880–881 (holding that the trial court abused its discretion when it refused to dissolve an injunction when the evidence established the only reason supporting the initial granting of the injunction had changed).

13

installed fences around the 1st and 4th Avenue properties was cumulative of other evidence introduced during the hearing. Specifically, during the bench trial, Wood testified that he was prepared to immediately install six-foot chain link fences around each property. In addition, we conclude Wood did not establish that the chain link fence evidence is so material that it would probably produce a different result if a new trial were granted. The trial court had already heard Wood's testimony regarding the proposed installation of fences during the trial and still determined that the two properties were public nuisances that needed to be demolished. The trial court also heard evidence of (1) Wood's long neglect of the two properties, (2) Wood's own testimony that he had no immediate plans to make repairs to the two buildings, (3) the long-term failure of Wood's other efforts to secure the two buildings against unauthorized entry, and (4) the fact that erection of chain link fences did not address the problems other than unauthorized entry that were found in each structure.

Based on this evidence, we hold that the trial court did not abuse its discretion when it determined that evidence of Wood's actual (rather than proposed) installation of the chain link fences would not produce a different result if Wood was granted a new trial. *See id.* We overrule Wood's third issue.

## CONCLUSION

Having overruled Wood's issues on appeal, we affirm the trial court's judgment.

_____
J. Brett Busby
Justice


Panel consists of Chief Justice Hedges and Justices Brown and Busby.

14